**50**

Charles M. CABLE, Administrator of the Estate of T. J. Wilkins, Deceased, Plaintiff,

v.

R. Chester WILKINS, a son of T. J. Wilkins, and Leslie Scott, Assignee, Defendants.

No. 7965.

Springfield Court of Appeals.

Missouri.

Nov. 28, 1961.

Bradley & Noble, Kennett, for plaintiff-interpleader.

Ted M. Henson and Ted M. Henson, Jr., Poplar Bluff, for defendant-appellant.

McHaney & McHaney, Kennett, for defendant-respondent.

ELMO B. HUNTER, Special Judge.

This is an interpleader action commenced by Charles M. Cable, Administrator of the estate of T. J. Wilkins, deceased, to determine whether deceased's son, R. Chester Wilkins, appellant herein, or Leslie Scott, respondent herein, is entitled to a certain estate interest of approximately $7,290.40 assigned by appellant to respondent to secure a note in the sum of $5,000.00.

The controversy arose out of the sale on July 15, 1959, by Scott to Wilkins of a tavern and trade fixtures in Fort Gibson, Oklahoma, together with a $500.00 loan to Wilkins by Scott for all of which Wilkins gave Scott a $5,000.00 note secured by Wilkins' estate interest mentioned above. The

cause was tried to the court without a jury and judgment was rendered for respondent Scott for $5,800.66, including interest and attorneys' fees.

Respondent pleaded and relied upon the note. Appellant's pleaded defense to the note was "(it) was obtained from him by fraud * * * without consideration * * * that there has been a total failure of consideration", specifying (1) Scott falsely represented the tavern had a reasonable value of $4,500.00; (2) that it "was a profitable rental building and business"; (3) that its net profits were $250.00 per week and (4) that it was free of liens and encumbrances. Appellant additionally alleged the real estate, trade fixtures and beer business were not worth over $700.00; that net profits never exceeded $25.00 per week as rental income; "that the beer trade of said tavern depended upon the use of baseball pool selling and policy number games to secure the trade of negro customers to promote the sale of beer"; that the trade fixtures were never delivered and that there was a lien on the premises. Appellant's final allegation was that upon discovery of the fraud he repudiated the transaction and now tenders into court the $500.-00 loan money and the warranty deed to the property, praying that the deed be cancelled and that the parties be restored to their original status.

On this appeal appellant has abandoned any claim of fraud or total failure of consideration and contents himself with the sole contention that "The trial court erred in rendering judgment for defendant Scott for the full amount of the note sued on and in failing to reduce the amount of the judgment to the extent that there was a partial failure of consideration." He asks that the judgment be reduced in an amount equal to the value of the repairs which were promised and not made, by the value of the undelivered trade fixtures and by the difference between the actual value of the tavern and its represented value.

Appellant and respondent were the principal witnesses in their own behalf. Their testimony was quite contradictory in several respects. The essence of appellant's testimony was that he had known respondent since the 1920's. Over a period of at least five weeks he and respondent discussed the sale of the property, and during that time he was often in the tavern. He stated respondent represented the place as being one where you could gamble and have a bar and make $250.00 or $300.00 a week; at another point appellant stated respondent represented the place as making $200.00 a week; that their oral agreement was that respondent was to give him $500.00 cash and the tavern building and respondent was to "repair this building, put it up first-class for me, and put water in it", plaster the building and when this was done and the deal was closed was to provide and place in the building certain fixtures then stored in Muskogee, Oklahoma.

In his testimony appellant conceded that respondent gave him a warranty deed to the premises, that water had been put in the building and a tap connected and that the roof had been repaired. He claimed respondent had not given him a key to the premises and had failed to deliver the fixtures. Appellant admitted that after the transaction he had mortgaged some of the trade fixtures to a bank to secure a loan from the bank. He left Oklahoma shortly after the transaction and had not returned to Oklahoma since August, 1959. "Last fall" (1960) he told respondent he was repudiating the agreement and offered to return the $500.00 and the deed and abstract.

Without objection appellant was asked if he had any convictions of crime to which he replied that he had been convicted in the Federal Court of kidnapping; in the Missouri courts for rape; for carrying concealed weapons, for petit larceny and for driving a vehicle while intoxicated. He was asked, "Q. To refresh your memory, were you not also tried or pleaded guilty to felonious assault? A. No. (Mr. Billings) We object to that, if the Court please, because he's exhausted. The witness: You ought to object to something."

The essence of respondent's testimony was that appellant purchased from him for $4,500.00 and a $500.00 cash loan the tavern and certain named fixtures and that as a part of the deal respondent was to put running water in the tavern and fix the tavern roof. He stated he had done these things. He denied he had agreed to do any plastering or other repairing of the building. He testified he told appellant he was getting $80.00 a month out of the building and that this was the fact. He stated that for several years he had been renting the premises to a third party and had no knowledge of any gambling on the premises. He disagreed to a minor extent as to just what trade fixtures were in the deal and stated that he had endeavored to deliver them to appellant to whom he had given the key to the premises but that appellant had prevented delivery of them to the tavern by refusing him admittance to it. He stated the fixtures were available to appellant at the same location and in the same condition as at the time the deal was made, and that appellant had mortgaged some of these fixtures to a third party. Respondent testified the market value of the building was from $4,500.00 to $5,500.00. Respondent's witness Brown testified as an expert that value of the lot and tavern thereon was between four and five thousand dollars. There was no other testimony as to its value.

As presented, the sole question before this court is whether the trial court erred in failing to find on this evidence a partial failure of consideration and to give judgment accordingly. On such issue our duty is to review the law and the evidence as in suits of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and due regard must be given to the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R.

The defense of failure, or partial failure, of consideration is an affirmative defense. Civil Rule 55.10. As stated in O'Day v. Annex Realty Co., Mo.Sup., 236 S.W. 22, 24, "It is settled law in this state that a partial failure of consideration of a bill of exchange or promissory note, where the amount of the consideration failing is liquidated or can be definitely calculated, is a defense pro tanto to an action on, or claim under, the instrument". The burden of proof on the issue of partial failure of consideration is on the party asserting it— in this instance, appellant.

This brings us to a consideration of the evidence which appellant asserts establishes partial failure of consideration. The rule is that where the trial court was not requested to make a statement of the grounds for his decision all fact issues on which no specific findings are made shall be deemed to have been found in accordance with the result reached. Civil Rule 73.01 (d); Mayo v. Lasater, Mo.App., 312 S.W. 2d 601. Appellant claims part of the consideration for the note was that respondent agreed to install running water in the building, plaster the building and fix the roof. Appellant's own testimony is that respondent did fix the roof and put a faucet of running water in the building. Absent a more definite agreement on these items by the parties, we find in accordance with the result reached by the trial court that this part of the promise was fulfilled.

Respondent denied that he promised to plaster the building. Appellant stated he did so promise. On this conflict of oral testimony involving the credibility of the parties we give deference to the result reached by the trial judge who saw and heard the witness and who is thereby in a better position to resolve this factual dispute. There is also a conflict of oral testimony as to whether respondent misstated the rental income, or profit, of the business. Assuming, without deciding, that such testimony bears on the question of partial failure of consideration we again defer to the trial court's resolution of that fact issue.

The final contention of appellant is that the trade fixtures were not delivered to

the tavern building and that this resulted in a partial failure of consideration.[1] Appellant, himself, testified the trade fixtures were not to be moved into the building until the work on the building was completed and the transaction closed. Appellant has been out of the state since August, 1959—shortly after the closing of the transaction. Respondent testified the keys to the building had been turned over to appellant and that he, respondent, had gone to West Memphis unavailingly to get appellant to go to Oklahoma and open the building so the trade fixtures could be moved in. It is well established and fundamental that he who prevents a thing from being done shall not be permitted to avail himself of the nonperformance which he himself has occasioned. See, Spitcaufsky v. Guignon Real Estate, Mo.Sup., 321 S.W.2d 481; 17 C.J.S. Contracts § 468, page 966. The trade fixtures, according to respondent, are still available to appellant who has treated them as his by mortgaging a substantial portion of them to a third party. Under the related circumstances we find no merit in appellant's final contention.

■ It is unnecessary to consider other reasons advanced by respondent for affirmance of the judgment. Upon our own review of the law and the evidence we think it is abundantly clear that the judgment rendered by the trial court was sound and was for the right party. Respondent filed a motion to dismiss the appeal for failure of appellant's brief to comply with certain of the civil rules. That motion was taken with the case. In the exercise of our discretion, we overrule it.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

RUARK, J., not participating.

---

1. There was no testimony as to the value of those trade fixtures. See, Blickhan v.

Trans World Airlines, Inc., Mo.App., 305 S.W.2d 743, 747(7).