Reuben **HILLIS** and **H. B. Hillis,**
**Appellants,**

v.

**J. L. BLANCHARD, Respondent.**

No. 52693.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1968.

Eugene E. Reeves, Ward & Reeves,
Caruthersville, for appellants.

Linus E. Young, Portageville, Blanton,
Blanton & Rice, Sikeston, for respondent.

FINCH, Presiding Judge.

Plaintiffs appeal from an adverse judgment in this suit wherein they sought (1) a declaration of their rights under a written contract, (2) specific performance of a provision therein for the purchase of 93 acres of land, and (3) possession of other

land leased pursuant to the contract, together with damages for wrongful taking and withholding of possession by the defendant. We have jurisdiction because a suit for specific performance of a contract to sell land involves title to real estate. Wilkinson v. Vaughn, Mo., 419 S.W.2d 1. In addition, plaintiffs sought damages in excess of $15,000.

This case came to the writer on reassignment after an opinion originally written herein was not adopted.

Plaintiffs' fourth amended petition alleged the execution by the parties on April 7, 1961, of a written contract wherein 93 acres of land in New Madrid County were to be sold by defendant to plaintiffs, and the remainder of the 259 acre tract was leased to plaintiffs for a period from January 1, 1962, to January 1, 1966. Count I of the petition sought a reformation of the description of the 93 acre tract. Count II sought a declaratory judgment as to plaintiffs' rights with reference to purchase of the 93 acre tract under the April 7, 1961 agreement. Count III sought a declaration of plaintiffs' rights as to the rental of the other acreage. Count IV sought specific performance of the contract to purchase the 93 acres. Count V sought possession of the rented land plus damages for loss of profits as a result of the defendant's wrongful taking and withholding of possession of the tract in the spring of 1963. The case went on change of venue from the Circuit Court of New Madrid County to the Cape Girardeau Court of Common Pleas. That court corrected the description under Count I, but found against plaintiffs on all other counts.

The parties originally entered into a written lease dated in November, 1959, covering approximately 259 acres owned by defendant. The lease covered the year 1960 but granted plaintiffs a renewal option for two additional years. The lease provided for cash rental of $7,000 for the year, payable in advance on or before January 1.

On April 7, 1961, the parties executed a new written conract. It provided that defendant would sell, and plaintiffs would purchase, a tract containing 93 acres, more or less, for $337.65 per acre. The total purchase price amounted to $32,550. Credit thereon as a down payment was given for $2,510 previously paid as cash rent.

The contract recognized that defendant had outstanding on his entire tract a deed of trust to Connecticut General Life Insurance Company on which the balance of principal at that time was $31,400. This deed of trust was payable at the rate of $1,600 per year, plus interest, payable on January 1 of each year. At the time of the execution of the contract, defendant's payment to Connecticut General for 1961 was past due. Plaintiffs agreed to make that 1961 payment (it constituted an additional down payment on the purchase) and thereafter to make the payments of $1,600, plus interest, for the years 1962 through 1965. Plaintiffs also were to pay taxes and special assessments on the 93 acres. The contract further provided that on January 1, 1966, plaintiffs were to pay the balance of the purchase price in the sum of $22,040, plus interest thereon. Defendant agreed at that time to secure release of the land from the deed of trust and to convey to plaintiffs by general warranty deed. An abstract of title was to be furnished.

Under Article Eight of the contract, defendant could take possession of the 93 acre tract if plaintiffs defaulted in performance of their obligations. In that event, plaintiffs would forfeit their rights, including payments theretofore made by them, but would receive credit for any improvements which they had made (less depreciation).

The April 7, 1961 agreement also provided that plaintiffs were to rent the remainder of the 259 acre tract (approximately 166 acres) at $28 per acre for the period from January 1, 1962, to January 1, 1966. Taxes and special assessments thereon were to be paid by defendant. The contract did not spell out further details of the rental

agreement, but the prior lease dated in November, 1959, was attached and incorporated by reference and it provided that rentals were to be paid in advance on or before January 1.

Plaintiffs paid for the years 1961 and 1962 both the payments to be made on the purchase price of the 93 acre tract and the amounts due as rentals for the leased land.

In the fall of 1962, defendant desired to refinance his indebtedness with Connecticut General, and arranged to do so with the Federal Land Bank Association in the amount of $52,600 (this was a substantial increase in the amount borrowed because the amount due Connecticut General at that time apparently was $29,800).

As a condition to making the loan to defendant, the Federal Land Bank Association required that he obtain and record a quitclaim deed from plaintiffs. Defendant requested plaintiffs to execute such a deed for that purpose, and plaintiffs did so on December 20, 1962. At that time, plaintiffs were not in default on their contract. No consideration was paid to plaintiffs for the quitclaim deed. The trial court found that the quitclaim deed was not intended to destroy any contractual rights which plaintiffs had as purchasers and was executed solely as an accommodation to permit defendant to obtain a loan through the Federal Land Bank Association on the property. Defendant himself testified that the quitclaim deed was not intended to convey title to him. At the time of the request for and the execution of the quitclaim deed, the defendant told plaintiffs that he would have the contract retyped immediately, substituting only a provision for payments to Federal Land Bank Association instead of Connecticut General, and that he would have the new instrument recorded. As Reuben Hillis testified, the new draft was to be the same as the old except it "would spell out who the payment that I had been making to Connecticut General would be made to." Defendant said he would try to do this by December 29 or 30, 1962.

Defendant did not furnish plaintiffs with the retyped contract, as he had promised to do. No such instrument was ever signed and delivered to plaintiffs. Defendant did have a new contract drafted by his attorney in the spring of 1963 which provided for a straight lease of the entire tract (including the 93 acres) at $7,000 per year, with no right of purchase in plaintiffs, and defendant sought to get plaintiffs to sign that agreement. It was substantially different from the contract of April 7, 1961. Plaintiffs refused to execute that proposed contract.

We consider first the issues presented relating to the contract to purchase the 93 acres and plaintiffs' rights with reference thereto.

Plaintiffs did not pay the $1,600, plus interest, due on January 1, 1963. Reuben Hillis, one of plaintiffs, testified that he kept trying to get the retyped contract but defendant kept stalling him off and never did deliver it to him. Plaintiff contends that he wanted the new instrument he had been promised. He was entitled to it and needed it in order to know how and to whom the payment was to be made as a result of the refinancing.

Ultimately, on May 1 or 2, 1963, defendant, with a shotgun, dispossessed plaintiffs. Previous thereto, on April 25, 1963, defendant had borrowed $10,000 which he secured with another deed of trust on this land. Thereafter, defendant farmed the entire tract, including the 93 acres which plaintiffs were to purchase. Subsequently, this suit was brought.

Defendant pleaded and contends that plaintiffs, by failing to make the payment of $1,600 and interest on January 1, 1963, were in default under the contract, and that this gave him the right to reenter and take possession, forfeiting any further rights that plaintiffs had under said contract. Defendant also pleaded that plaintiffs were seeking in this action to recover on an oral contract for the purchase of real estate and which was not to be performed within a

year, and that the contract was unenforceable under the statute of frauds. The trial court sustained both of these contentions of defendant.

In the first place, we have concluded that the statute of frauds has no application to this case. Plaintiffs' petition seeks a declaration of their rights under the written contract of April 7, 1961, and for specific performance of that contract. They do not seek by their petition to enforce an alleged oral contract. The trial court found that the quitclaim deed was not intended to convey title to the defendant or to affect in any way the contractual rights of the plaintiffs under the April 7, 1961 contract. They seek the enforcement of those contractual rights. They relied on the failure of the defendant to comply with his promise to have the contract retyped to include the information relative to the new deed of trust as justification for delay on their part in making the January 1, 1963 payment on the purchase price, but they do not seek specific performance of an oral contract. We hold, therefore, that the statute of frauds is inapplicable.

It is our view that plaintiffs were justified in delaying the payment on the purchase price (the deed of trust payment) due January 1, 1963. The defendant had promised to furnish the retyped contract, giving the name of the lienholder, by December 29 or 30, 1962. He failed to do so. Plaintiffs, in the two preceding years, had made those payments to Connecticut General Life Insurance Company. In view of the refinancing by defendant, it was apparent that the payment due January 1, 1963, would not be paid to Connecticut General. The defendant did not furnish the retyped contract or any memorandum of any kind to show exactly how and to whom the January 1, 1963 payment was to be made. In view of the failure of the defendant to do as he had represented, he was not entitled to declare plaintiffs in default for failure to make the January 1, 1963 payment on time and thereby forfeit the prior payments made by them on the purchase price and their right to proceed with the purchase of the 93 acre tract. We hold that, under the circumstances, the failure of the plaintiffs to make the payment of $1,600, plus interest, on the deed of trust on January 1, 1963, was justified by the failure of defendant to do as he had promised. Their delay, therefore, did not place them in default for which defendant could forfeit their rights. One who hinders performance by the other party may not avail himself of the nonperformance which he induced or occasioned. See 17A C.J.S. Contracts § 468, p. 645, wherein it is stated : " * * * and, where he prevents, hinders, or renders impossible, the fulfillment of a condition precedent or its performance by the adverse party, or is himself the cause of failure to perform the condition, he cannot rely on such condition to defeat his liability."

Defendant cites and relies on two cases to support his contention that plaintiffs were not entitled to specific performance because of their default in failing to make the payment due January 1, 1963. The first case cited is McQuary v. Missouri Land Company of Scotland, 230 Mo. 342, 130 S.W. 335. We will not recite the facts in that case other than to say that the plaintiff sought specific performance of a contract and this court held that plaintiff, by reason of his failure to timely meet the obligations imposed on him, could not have specific performance, time being of the essence of the contract. An examination of the case clearly demonstrates that the defendant company did nothing to either cause or justify failure on the part of plaintiff to meet the obligations imposed on him by the contract. At one place, 130 S.W. l.c. 342, the opinion says: "In fact everything the Scotch Company agreed to do it did as the contract required," and again, l.c. 343, " * * * we are unable to find any element of estoppel in anything done or said by Judge Vincent and certainly nothing by the Scotch Company * * *." It is clear, therefore, that the McQuary case is not at all comparable to the factual

situation with which we are concerned, wherein the delay in performance by plaintiffs is attributable to or justified by failure on the part of the defendant to do as he had promised to do.

The other case cited and relied on by defendant is Ferguson v. Kindle et al., Mo., 396 S.W.2d 626. This was a suit for specific performance of a contract to purchase a farm. The evidence disclosed that the plaintiff was to pay the purchase price in the summer of 1962 but did not do so. There was evidence that he had told the defendants that he did not have the money to make the purchase, and that on two earlier occasions he had given similar excuses after stating he would buy the farm. Again, there was no evidence whatsoever of any failure or default on the part of defendants, who were the vendors in the land contract. They had finally sold the farm to others for less money when plaintiff failed to pay and complete the purchase. Under these circumstances, the court held that plaintiff, having repudiated and abandoned the contract, was not entitled to specific performance. The Ferguson case also is not comparable to the situation here presented, wherein the defendant caused or at least contributed to the delay in performance by the plaintiffs.

This case was tried May 12, 1965. Prior thereto, plaintiffs tendered and paid into the registry of the court the sum of $9,-153.90, which the record shows amounted to the total payments of $1,600, plus interest, which were due January 1, 1963, January 1, 1964, and January 1, 1965.

We find that plaintiffs are entitled to the specific performance of their contract to purchase the 93 acre tract. The contract was to have been completed January 1, 1966, by payment of the balance of the purchase price, but at that time this case was under submission. The trial court, on remand, should determine the balance of purchase price due, taking into consideration the sum tendered and now in the registry of the court. If, within a reasonable time, to be fixed by the trial court, the plaintiffs pay over a sufficient amount in addition to the sums on deposit in the clerk's office to pay the purchase price in full, plaintiffs are entitled to and should receive a deed to the 93 acre tract, free and clear of all liens and encumbrances. If plaintiffs do not pay over the balance of the purchase price in the amount and within the time to be fixed by the trial court, then a decree should be entered which terminates the interest of plaintiffs in the 93 acres and in the contract to purchase the same.

The contract with respect to the 93 acres provided that plaintiffs were to pay taxes thereon, but plaintiffs were entitled to the possession thereof and had the right to farm the same. Defendant took possession in the spring of 1963 and thereafter farmed this tract. Consequently, plaintiffs are entitled to an accounting for the rents and profits for the 93 acres, against which should be charged the taxes which plaintiffs were obligated to pay.

The second issue for us to determine involves what relief, if any, plaintiffs are entitled to under the provisions in the contract relating to the rental of the balance of the tract.

The evidence as to the amount, if any, of rental due January 1, 1963, which plaintiffs paid in advance, was not very clear or convincing. The trial court found that plaintiffs were in default in their obligation to pay, in advance, rentals due January 1, 1963, and that the defendant was justified in taking possession thereof. We defer to the finding of the trial court on this issue.

The events which we have held excused delay in making the January 1, 1963 payment on the purchase price had nothing to do with payment of rentals on the rest of the tract and did not justify delay on the part of the plaintiffs in paying those rentals. Consequently, we affirm the finding of the trial court denying any relief to plaintiffs on their request for

possession and rents and profits with respect to the rental lands.

We affirm the action of the trial court in correcting the description as sought in Count I. We affirm the judgment of the trial court in denying any relief to plaintiffs with respect to the lands rented by plaintiffs under the contract of April 7, 1961. We reverse the judgment of the trial court with respect to the 93 acre tract and remand the case with respect thereto for further proceedings in accordance with this opinion.

PER CURIAM.

The foregoing opinion by FINCH, J., written in Division Two, is adopted as the opinion of the Court en Banc.

All concur except DONNELLY, J., who dissents in separate dissenting opinion filed.

DISSENTING OPINION

DONNELLY, Judge.

The principal opinion holds that plaintiffs are entitled to specific performance of the contract to purchase the 93-acre tract, executed April 7, 1961. It is undisputed that plaintiffs defaulted on this contract when they failed to make the payment due January 1, 1963. Article Eight of said contract provided as follows:

"In the event of default of Second Parties in the performance of the terms and conditions set forth herein prior to January 1, 1966, it is agreed First Parties shall have the right to re-enter said 93 acres and take possession thereof and Second Parties shall forfeit any payments made hereunder   *   *   *."

The principal opinion holds that plaintiffs were justified in delaying said payment. I do not agree. Plaintiffs should have made the payment directly to defendant on January 1, 1963. "A fundamental rule is that where plaintiff has wholly failed to meet the substantial terms of the very agreement on which he relies, he cannot complain if a court of equity leaves him where he has placed himself. This is a plain rule of fairness that has become a maxim of the law." McQuary v. Missouri Land Co. of Scotland, 230 Mo. 342, 361–362, 130 S.W. 335, 340.

I respectfully dissent.