STATLER MANUFACTURING, INC., James L. Statler, Wyatt Statler, and Nadine Lewis, Plaintiffs-Appellants,

v.

Thomas C. BROWN and Eugene Ferguson, Defendants-Respondents.

No. 13726.

Missouri Court of Appeals, Southern District, Division Three.

April 30, 1985.

Motion for Rehearing or to Transfer Denied May 21, 1985.

Application to Transfer Denied June 25, 1985.

William C. Vandivort, Lew Polivick, Vandivort and Polivick, Sikeston, for plaintiffs-appellants.

G.H. Terando, Little, Million, Terando, Schellhammer & Assoc., Ted M. Henson,

Jr., Scott and Henson, Poplar Bluff, for defendants-respondents.

FLANIGAN, Judge.

On January 10, 1980, plaintiffs, as "contractor," and defendants, as "owner," entered into a written agreement for the construction, by the contractor, of a building. Each side dealt with the other through their respective agents, primarily plaintiff James Statler and defendant Eugene Ferguson, and the authority of the agents has not been questioned. For simplicity, the four plaintiffs will be referred to as "the contractor" and the defendants will be referred to as "the owner."[1]

The agreement recited that the building "shall be constructed on the owner's property, approximately located on the south side of U.S. Highway 60, six hundred feet east of the Poplar Bluff airport." The "contract sum," to be paid by the owner to the contractor for the performance of the contract, was $413,286, and it was to be paid in installments due at various stages of the work. Ten percent of the contract sum was due upon signing of the contract and the owner paid the contractor $41,328.60 at that time.

Shortly after the signing of the contract the contractor commenced work, primarily readying the job site for delivery of the building, a "pre-engineered" steel building to be manufactured by Behlen Manufacturing Company of Columbus, Nebraska. The agreement required the owner to pay the contractor 25 percent of the contract sum upon delivery of the building to the job site.

On September 13, 1951, a previous owner of the land had conveyed to the city of Poplar Bluff "for the benefit of the general public at large, an easement and right-of-way for free and unobstructed passage of aircraft, by whomsoever owned or operated, in and through the air space over,

above and across" the job site. The easement was recorded in October 1951.

On March 12, 1980, Walt Fuller, the manager of the Poplar Bluff airport, informed the owner that the building, if erected, would violate the easement. The contractor then ceased work. The contractor's evidence was to the effect that he informed the owner that the owner would "have to resolve the problem because the building was on order from Behlen and was scheduled to be delivered." According to the contractor the owner informed him that he had better not have the building delivered because "we ain't going to pay for it." This action ensued.

The contractor sued the owner for breach of the agreement and sought damages in the sum of $120,837.40 for "expenses in performing the agreement" and loss of profits. The owner counterclaimed for breach of contract and sought recovery for expenses allegedly incurred by the owner, including the down payment. The trial court, sitting without a jury, found the issues in favor of the owner, denied the contractor recovery on the petition, and awarded the owner $41,328 on the counterclaim. The contractor appeals.

The record justifies a finding that neither the owner nor the contractor had actual knowledge of the easement until March 1980, after the contractor had done considerable work.

Walt Fuller, a witness for the owner, testified that in March he "got in touch" with the owner and told the owner that the building "would be in the way of a clear zone that we had in the airport." Fuller testified as follows:

Q. Okay. The problem which arose with respect to construction of a building on land located near the Poplar Bluff Airport—that problem arose because the owners of the property did not own the air rights; is that right?

---

1. The four plaintiffs are Statler Manufacturing, Inc. and its three principal shareholders. The latter signed the agreement as "guarantors" of the corporate plaintiff. Neither side seeks to make any distinction between the rights and liabilities of the three individual plaintiffs and those of the corporate plaintiff and this court will refrain from doing so. The two defendants were in business together at the time the agreement was signed.

A. The City has an easement.

Q. Okay. The owners of that property do not own the air rights; is that correct?

A. That's correct.

Q. And that's what created the problem which you testified to; is that right?

A. That's right.

After *Fuller* had notified the parties that the proposed building, if erected, would violate the city's easement, the contractor notified the Federal Aviation Administration of the proposed construction. On May 20, 1980, the FAA wrote the contractor and informed him that the proposed structure "is located within a clear zone," and "would prohibit the installation of an approach light system in support of an instrument landing system." The letter also stated that the proposed structure was "a hazard and would have a substantial adverse effect on the safe and efficient use of navigable air space by aircraft."

Under cross-examination by the owner's counsel, the contractor testified that before the agreement was signed "I checked with the FAA to see if it was necessary to file a notice of proposed construction so that I could have in turn advised [the owner] that one would have to be filed and [the FAA] told me that it was not necessary." Referring to his correspondence with the FAA after Fuller notified the parties of the easement, the contractor said that filing the notice of the proposed construction with the FAA "was necessary only because the city of Poplar Bluff owned the air space above the ground that [the owner] wanted to build the building on."

The trial court found that "*because of this easement,* the proposed construction was located in a clear zone of the Poplar Bluff airport." (Emphasis added.) The trial court also found that there was a "conflict between the easement and the proposed construction." The record supports these findings.

The May 20, 1980 letter from the FAA did not purport to grant or deny consent to the proposed construction. The record shows the impediment to the erection of the building was the existence of the easement. The trial court also found, however, that certain provisions of the contract made it the duty of the contractor, and not the owner, to obtain relief from the easement.

Although the record does not reflect an attempt by either side to obtain, from the city, relief from the easement, it is a reasonable inference that relief would not have been granted in view of the airport manager's actions and the findings of the FAA, and neither side contends otherwise.

The contractor contends that the trial court erred in not finding that the owner, rather than the contractor, breached the contract because (a) the owner was obligated to provide a construction site on which the building could be erected but failed to do so, (b) the owner prevented the contractor's performance by instructing the contractor to stop construction and informing the contractor it would not pay for the building, and (c) the "true problem" was that the owner purchased the land subject to the easement and the easement prevented the construction. The contractor argues that the responsibility for the easement was that of the owner. The owner argues that under the contract it was the duty of the contractor to obtain relief from the easement.

■ For the reasons which follow, this court holds that the existence of the easement prevented the performance of the contract by the contractor, that the responsibility for the easement was that of the owner and not of the contractor, that the owner breached the contract by failing to obtain relief from the easement, and that it was the contractor, rather than the owner, who was entitled to recover.

■ If a contractor is prevented from completing the work by the act of the owner, the latter has breached the contract. *Gruhala v. Lacy,* 559 S.W.2d 286, 289 (Mo. App.1977); *Ark Const. Co. v. City of Florissant,* 558 S.W.2d 418, 422 (Mo.App.1977); *Veterans Linoleum & Rug, Inc. v. Tureen,* 432 S.W.2d 372, 376 (Mo.App.1968). Similarly, the contractor is excused from

performing his contractual obligations if performance is rendered impossible by the act of the owner. *Hillis v. Blanchard,* 433 S.W.2d 276, 279 (Mo. banc 1968); *Ellis Gray Milling Co. v. Sheppard,* 359 Mo. 505, 222 S.W.2d 742, 748 (banc 1949); *Kansas City Term. Ry. Co. v. Atchison, T. & S.F. Ry. Co.,* 512 S.W.2d 415, 422 (Mo.App. 1974); *Stein v. Bruce,* 366 S.W.2d 732, 734 (Mo.App.1963); *Cable v. Wilkins,* 352 S.W.2d 50, 53 (Mo.App.1961); *Goss v. Suburban Motors,* 282 S.W.2d 864, 866 (Mo. App.1955); *Ward v. Haren,* 139 Mo.App. 8, 119 S.W. 446, 448 (Mo.App.1909); If a contractor has partly performed the work but is prevented by the owner from completing it, the contractor may cease work and sue for breach of contract. *Curators, Etc. v. Neb. Prestressed Concrete,* 526 S.W.2d 903, 911 (Mo.App.1975); *Reid v. Kelly,* 300 S.W.2d 542, 544 (Mo.App.1957). If the act of the owner prevents the contractor from performing the work, the contractor has the choice of suing on the express contract or suing on quantum meruit for the value of the labor and materials the contractor has furnished. *Kansas City Structural Steel Co. v. Athletic Bldg. Ass'n,* 297 Mo. 615, 249 S.W. 922, 923 (banc 1923); *Rodgers v. Levy,* 199 S.W.2d 79, 81 (Mo.App. 1947); *Ott v. Moore,* 20 S.W.2d 166, 167 (Mo.App.1929).

"It is sufficiently obvious that a contract for the construction of a building, even in the absence of an express stipulation upon the subject, implies as an essential condition that a site shall be furnished upon which the structure may be erected." *Guerini Stone Co. v. P.J. Carlin Const. Co.,* 248 U.S. 334, 340, 39 S.Ct. 102, 104, 63 L.Ed. 275 (1919). To similar effect see *Fritz-Rumer-Cooke Co. v. United States,* 279 F.2d 200, 201 (6th Cir.1960); *F.J. Lewis Mfg. Co. v. Snyder,* 37 F.2d 299, 300 (6th Cir.1930); *Great Lakes Const. Co. v. Republic Creosoting Co.,* 139 F.2d 456, 464 (8th Cir.1943); *Hensler v. City of Los Angeles,* 124 Cal.App.2d 71, 268 P.2d 12, 21 (1954); *Walter Kidde Constructors, Inc. v. State,* 37 Conn.Super. 50, 434 A.2d 962, 967 (1981); *J.A. Jones Const. Co. v. City of Dover,* 372 A.2d 540, 546 (Del.Super.1977);

*Town and Country Engineering Corporation v. State,* 46 N.Y.S.2d 792, 800 (Ct.Cl. 1944); *J.W. Brennan Const. Co. v. State,* 117 Misc.Rep. 816, 191 N.Y.S. 253, 257 (Ct. Cl.1921); 17A C.J.S. Contracts § 468, p. 643.

◼ The agreement recited that the building "shall be constructed on the owner's property." Throughout the agreement the defendants were described as "the owner." Even in the absence of that express representation of ownership, the law would imply, as the foregoing authorities demonstrate, a duty on the part of the owner to furnish a site upon which the structure could be erected.

◼ The easement held by the city was "a property interest in land carved out of an owner's fee simple title." *Bunyard v. Turley,* 410 S.W.2d 706, 708 (Mo.App.1967). The easement was "a charge or burden on one estate, the servient, for the benefit of another, the dominant." 25 Am.Jur.2d Easements § 1, p. 417. The city was the holder of the easement and only the city could grant relief from it, absent termination or extinguishment of it for other reasons not present here.

Neither side has questioned the validity of the easement and it is clear that the erection of the building would violate it. Accordingly the owner failed to furnish a site upon which the building could be erected and was guilty of misrepresentation, although an innocent one, in claiming, in the agreement, to be the owner.

◼ The city's easement was recorded in 1951. The owner, as a subsequent grantee of the servient tenement, was charged with constructive notice of the recorded easement, *Loumar Development Co. v. Redel,* 369 S.W.2d 252, 257[13] (Mo.1963), and this is true whether or not the easement was mentioned in the deed by which the owner acquired title. *Brown v. Redfern,* 541 S.W.2d 725, 730[18] (Mo.App.1976).

◼ The contractor, on the other hand, was not charged with notice of the easement. A recorded instrument is construc-

tive notice only to those who are bound to search for it. *Miller v. Schwinn, Inc.*, 113 F.2d 748, 753 (D.C.Cir.1940); *Mountain States Telephone and Telegraph Company v. Kelton*, 79 Ariz. 126, 285 P.2d 168, 170 (1955); *Texas-New Mexico Pipe Co. v. Allstate Construction*, 70 N.M. 15, 369 P.2d 401, 403 (1962); *Argonaut Southwest Insurance Company v. Maupin*, 485 S.W.2d 291, 296 (Tex.Civ.App.1972), rev'd on other grounds, 500 S.W.2d 633 (Tex. 1973); *Duitman v. Liebelt*, 17 Wisc.2d 543, 117 N.W.2d 672, 674 (1962); *Perkins v. Perkins*, 173 Wisc. 421, 180 N.W. 334, 337 (1920); 66 Am.Jur.2d Records and Recording Laws § 103, p. 403; 66 C.J.S. Notice § 13c, p. 650.[2]

The parties have not cited, and the independent research of this court has not disclosed, any case factually similar. Cases providing helpful analogies include *Texas-New Mexico Pipe Co. v. Allstate Construction*, supra, *Mountain States Telephone and Telegraph Company v. Kelton*, supra, and *Socony-Vacuum Oil Co. v. Bailey*, 202 Misc. 364, 109 N.Y.S.2d 799 (1952).

In *Mountain States* a telephone company sued a landowner and his contractor for damage to its underground cable which had been installed pursuant to a recorded easement. The contractor, whose operations had caused the damage, was exonerated but the owner was held liable. At 285 P.2d p. 170 the court said:

"It is admitted that the contractor had no actual notice that there was a buried cable, nor was this fact apparent from the visible inspection made by them of the premises prior to commencing the contracted work. We cannot agree with the implication that the contractor was bound to search the records and is charged with constructive notice of the contents thereof. While this

court has often said '* * * instruments authorized to be recorded, * * * when recorded, became notice to the world,' *First National Bank of Yuma v. Yuma Nat. Bank*, 30 Ariz. 188, 245 P. 277, 278, see, also, *Valley Products, Inc., v. Kubelsky*, 49 Ariz. 500, 68 P.2d 69, it is apparent this statement is not wholly accurate. As stated by the Supreme Court of Pennsylvania:

'It is sometimes said that the record of a deed is constructive notice to all the world. That, it is evident, is too broad and unqualified an enunciation of the doctrine. *It is constructive notice only to those who are bound to search for it * * *'* (Emphasis supplied.)

*Maul v. Rider*, 59 Pa. 167, 171. For a good statement of the rule, see 66 C.J.S., Notice, § 13c, page 650. We do not believe the contractor in the instant case was bound to search the record to learn of plaintiff's easement. He had no interest in the title to the land. We have been cited to no cases where constructive notice was applied to such a situation, nor has an independent search revealed such an extension of the doctrine."

In *Texas-New Mexico Pipe Co. v. Allstate Construction*, supra, a contractor was held not to have constructive notice of the location of an underground pipe line although the pipe line easement had been recorded. The court said, 369 P.2d at p. 403, "We cannot agree that a contractor employed to do work on land not in a public street or right-of-way, there being no visible evidence of a buried pipeline, was bound to search the records and is charged with constructive notice of the contents of such records." *Socony-Vacuum Oil Co. v. Bailey*, supra, also involved a recorded pipe line easement and is to similar effect.

---

**2.** In *Palmer v. Welch,* 171 Mo.App. 580, 154 S.W. 433, 439 (1913), the court said, "Although one's title to real property is of record, nevertheless an *estoppel* will arise against him, if by representations he has misled another with respect thereto, whereby the latter has been induced to act to his injury." See also *Batavia v. Leahy,* 115 S.W.2d 78, 83[4, 5] (1938).

Section 441.240 RSMo provides, in pertinent part: "[I]f any person shall buy any crop grown

on demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in an action for the value thereof, to any party entitled thereto. . . ." In *Dubach v. Dysart,* 184 Mo.App. 702, 171 S.W. 597 (1914), it was held that the "knowledge" required was actual knowledge and not constructive notice and the fact that the lease was recorded did not impart notice to the purchaser.

The trial court, in finding that the agreement made it the duty of the contractor to obtain relief from the easement, relied primarily on paragraph 11g, which reads:

"11. Contractor's Responsibility

.     .     .     .     .

g. The contractor ... shall secure at his cost all permits, fees and licenses necessary for the execution of the work. Prior to commencing construction, contractor shall satisfy owner that all necessary building permits have been issued without variance, or if there are variances to such permits, such variances have been fully disclosed to and approved by owner."

■ This court holds, however, that the duty imposed upon the contractor to secure "permits, fees and licenses necessary for the execution of the work" did not include a duty to obtain a release from the easement. The existence of the easement and its recordation antedated the agreement. Unless the city gave release from the easement, or it was otherwise extinguished, the building could not be erected at all. The easement was a total obstacle to the "execution of the work" and relief from it was not merely a "permit, fee or license necessary for the execution of the work."

Paragraph 11h of the contract made it the responsibility of the contractor to comply with "all laws, ordinances, rules, regulations, and orders of any public authority bearing on the performance of the work." It also imposed upon the contractor a duty to satisfy the owner that the proposed use of the land complied with "laws, ordinances, zoning, environmental, and pure air regulations," and that the completed building would comply "with all applicable local, state and federal laws, regulations and ordinances."

The easement held by the city was an interest in land. The city's rights arose under the deed creating the easement and not by reason of any "law," "ordinance," "rule," "regulation," or "orders of any public authority." This court holds that the relief from the easement was not within the contractor's responsibility contained

in paragraph 11g or 11h. To hold otherwise would ignore the owner's representation that he was in fact "the owner." The mere fact that the contractor, gratuitously, engaged in unfruitful correspondence with the FAA does not affect this holding.

■ For the foregoing reasons the owner was not entitled to recover on its counterclaim and the contractor was entitled to recover on the petition. Under Rule 84.14 V.A.M.R. it is the duty of this court to "dispose finally of the case" unless justice otherwise requires.

The record contains considerable evidence relevant to the issue of the extent of the contractor's damages. Exhibits were offered in support of the testimony on that issue. No precedential purpose would be served in summarizing that evidence which this court has carefully examined.

■ Where an owner breaches a construction contract by preventing the contractor from doing the work, the contractor's measure of damages is usually stated to be the contract price minus the amount it would have cost the contractor to complete the performance of the contract. See, for example, *Ark Const. Co. v. City of Florissant*, supra, where the rule was stated in a case where the contract was 90 percent completed. Other cases expressing the same rule include *Hammond v. Beeson*, 112 Mo.190, 20 S.W. 474, 476 (1892); *Atkins v. Clark*, 644 S.W.2d 365, 370 (Mo. App.1982); *Juengel Const. Co., Inc. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 514 (Mo.App. 1981); *Sides v. Contemporary Homes*, 311 S.W.2d 117, 120 (Mo.App.1958).

In the instant case the building was not delivered to the site and most of the contract remained to be performed. There was no evidence to show what it would have cost the contractor to have completed the contract and, under the peculiar circumstances, such completion would not have been possible.

In *Kansas City Structural Steel Co. v. Athletic Bldg. Ass'n*, supra, our Supreme Court held that if the owner prevents a contractor from completing a building con-

tract, the contractor may elect to sue upon the contract and claim damage for its breach, as was done here, or he may sue in quantum meruit for the reasonable value of the work and materials furnished. The court said, 249 S.W. at p. 923, "If he elects to sue upon the contract, the measure of his recoverable damages will include what he has actually expended toward performance and the profits he would have realized by performing the whole contract."

The contractor introduced evidence that his profit would have amounted to $63,450. He also introduced evidence of various expenses incurred. Those expenses, together with the lost profit, totaled $162,166. Subtracting the down payment of $41,328.60 which the owner made when the contract was signed, the contractor sued for $120,837.40, together with pre-judgment interest. This court finds that the evidence was insufficient to support an award of pre-judgment interest. This court also finds that one of the items, the cost of a trip to Nebraska, which the contractor listed at $1,375, was actually $875. With that exception this court finds the contractor's evidence on the issue of his damages supports his claim. Accordingly the trial court should have entered a judgment in favor of the contractor in the sum of $120,337.40. The judgment was entered on March 29, 1984, and should have been in that amount on that date.

The judgment is reversed and the cause remanded with instructions to the trial court to set aside its former judgment and to enter a new judgment in favor of the plaintiffs and against the defendants on the petition and in favor of the plaintiffs and against the defendants on the counterclaim. The amount of the new judgment shall equal $120,337.40, together with interest thereon at the lawful rate from and after March 29, 1984, until the date of entry of the new judgment, together with the costs. It is so ordered.

PREWITT, C.J., and TITUS, MAUS and CROW, JJ., concur.