

# Missouri Court of Appeals

## Southern District

### Division Two

CONSOLIDATED SERVICE GROUP, LLC,    )
                                    )
    Plaintiff-Respondent,           )
                                    )
MARC BENZ,                          )
                                    )
    Plaintiff-by-assignee-Respondent,    )
                                    )
    vs.                             )    No. SD33061
                                    )
JACK MAXEY and RUTH MAXEY,          )    **Filed:  January 21, 2015**
                                    )
    Defendants/Third-Party Plaintiffs-Appellants,)
                                    )
    vs.                             )
                                    )
MARC BENZ, and TAMKO BUILDING       )
PROJECTS, INC.,                     )
                                    )
    Third-Party Defendants.         )

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable David G. Warren, Circuit Judge

### AFFIRMED

Jack and Ruth Maxey (the "Maxeys"), through their daughter, Jackie Cernetich,

hired Consolidated Service Group, LLC ("Consolidated"), through its agent

representative Marc Benz, (collectively, "Plaintiffs"), to put a new roof on their home.

Prior to the completion of the job, a dispute arose over defective tiles and the looks of the roof. The Maxeys refused to allow Consolidated to make repairs to the roof and brought suit under the contract. The trial court granted summary judgment to Consolidated under the contract. The Maxeys claim that the court erred in entering summary judgment on Consolidated's claim for a breach of a roofing contract because Consolidated "failed to plead any facts to support their contention that [Consolidated] had performed their obligations under the terms of the contract" but only pled that the Maxeys had failed to allow Consolidated an opportunity to cure the defective roof as was provided in the contract. The Maxeys also claim trial court error because there is a material question of fact whether Consolidated and Benz abandoned their obligations under the terms of the contract or whether they were prevented from fully performing their obligations under the contract and whether the Maxeys were required to allow Benz an attempt to cure any default. We find no error and affirm the judgment.

Our standard of review was set forth in *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011):

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows. *Id.*

A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.*

Further,

[t]he record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. However, an appellate court reviewing the ruling of a circuit court is bound to consider the forms of the affidavits supporting and opposing summary judgment in accord with Rule 74.04(e),[1] which requires the affidavits to be made on personal knowledge and set forth facts that would be admissible in evidence. Additionally, the affidavit "shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e). In addition, the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial. Rule 74.04(c)(2), (c)(4).

*Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014) (internal citations and quotations omitted). Because the Maxeys' second point claims there are material disputed facts, we will commence our discussion with the second point.

"[I]f a contractor is prevented from completing the work on a construction project by the actions of the owners, the owners have breached the contract." *Erney v. Freeman*, 84 S.W.3d 529, 534 (Mo.App. S.D. 2002). Further, "[i]f the work has been partially completed at the time of the owners' actions, the contractor is excused from his

---

[1] All rule references are to Missouri Court Rules (2014), unless otherwise specified.

contractual obligations and may cease work on the project." *Id.* It is necessary to determine which, if any, party breached by considering whether the contractor's failure to complete the project, or his ceasing of the work, was due to actions of the owners that prevented him from completing the work or due to the actions of the contractor of walking away from the project. *Id.*

The Maxeys admit before this Court "that the Contract contained a right to cure provision giving [Consolidated] and Benz the right to cure any defects in their performance of the Contract."[2] They contend that there are three material questions of fact for the trier of fact that prevent summary judgment: (1) whether Consolidated and Benz were afforded an opportunity to cure when the defective shingles were discovered on the first day but other defective shingles were installed on the second day, (2) whether Benz's offers were conditional and constituted an abandonment of the project, and (3) whether the Maxeys could have any faith in Benz's offer to cure.

The following undisputed facts that are relevant to the Maxeys' appeal were submitted to the trial court:[3]

> 37. Jackie Cernetich e-mailed Mr. Benz on Monday, November 16, 2009[,] at 9:36 AM and stated, "Marc, with regard to our conversation earlier this morning. I want to confirm that we are not agreeing to anything you have verbally presented to us. Also, as I stated, no work is to be done on our home at 412 North Commercial Street in Crocker,

---

[2] In their suggestions to the trial court, the Maxeys did not argue that the contract provision did not provide that Consolidated had a "right-to-cure"; instead, they argued that they did allow Benz to cure the defects on the second day of the installation after defective tiles were discovered. The Maxeys contended that "the uncontroverted facts demonstrate that Plaintiff was given the opportunity to cure the defects found in the Maxey[s'] roof on November 4, 2009 and failed to properly do so."

[3] Respondents set forth no facts in the brief nor did they give any page cites to the summary judgment motion or responses to the summary judgment. Being mindful that though Respondents are not obligated to file a brief, we review an appeal from summary judgment in the light most favorable to the party against whom judgment was entered. It would be a far better practice to put page cites to the summary judgment motion in support of their argument rather than relying upon this Court to scour the summary judgment motion for the necessary cites.

4

Missouri, unless approved by us. We need Tamko's proposal in writing to properly assess their suggested remedy. Jacki [sic] Cernetich." *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 63-67, and *see* **Exhibit 14**, E-mail from Jackie.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 37 of Plaintiff's Statement of Uncontroverted Facts.**

38. At no point was Jackie acceptable to any terms provided by CSG as to how they were going to fix the roof. *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 67.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 38 of Plaintiff's Statement of Uncontroverted Facts[, and specifically states that Plaintiff knowingly installed a defective roof on Defendants'/Third Party Plaintiffs' home (see Exhibit 5, Deposition of Marc Benz, Page 60, Line 8 through Page 62, Line 15) and the roof on Defendants'/Third Party Plaintiffs' home needs to be replaced in its entirety (see Exhibit 5, Deposition of Marc Benz, Page 69, Line 21 through Page 71, Line 3)].[4]**

39. At no point did Jackie Cernetich authorize CSG to come back and do work at the house at 412 North Commercial Street in Crocker, Missouri. *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 67-68.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 39 of Plaintiff's Statement of Uncontroverted Facts[, and specifically states that Plaintiff knowingly installed a defective roof on Defendants'/Third Party Plaintiffs' home (see Exhibit 5, Deposition of Marc Benz, Page 60, Line 8 through Page 62, Line 15) and the roof on Defendants'/Third Party Plaintiffs' home needs to be replaced in its entirety (see Exhibit 5, Deposition of Marc Benz, Page 69, Line 21 through Page 71, Line 3)].**

40. Jackie Cernetich never asked Mr. Benz to repair the roof. *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 106.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 40 of Plaintiff's Statement of Uncontroverted Facts[, and specifically states that Plaintiff knowingly installed a defective roof on Defendants'/Third Party Plaintiffs' home (see Exhibit 5, Deposition of Marc Benz, Page 60, Line 8 through Page 62, Line 15) and the roof on Defendants'/Third Party Plaintiffs' home needs to be replaced in its entirety (see Exhibit 5, Deposition of Marc Benz, Page 69, Line 21 through Page 71, Line 3)].**

---

[4] We have set forth Defendants/Third Party Plaintiffs' responses in their entirety; however, we note that Rule 74.04(c)(2) does not provide for the material we have enclosed in brackets to be presented in this manner.

41.     Mr. Benz called Jackie Cernetich multiple times and Jackie Cernetich was annoyed by the amount of phone calls Mr. Benz made. *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 108.

**RESPONSE:  Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 41 of Plaintiff's Statement of Uncontroverted Facts.**

42.     Jackie Cernetich did not respond to some of Mr. Benz'[s] emails to her after the roofing project and it is "probably accurate" that she did not respond to most of his emails.  **Exhibit 4**, Deposition of Jackie Cernetich, p. 107.

**RESPONSE:  Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 42 of Plaintiff's Statement of Uncontroverted Facts.**

43.     Mr. Benz emailed Jackie on January 14, 2010 attempting to attach a document and stated, "Attached is the document stating that no additional expense will be charged back to your mother.  Although the roof will be installed on her residence, payment for materials and labor will be covered by the vouchers provided by Tamko.  There will be no shortcuts taken nor will any compromise be made on material quality in an effort to control costs.  I want the same thing for you now that lasts for projected life span.  Nothing has changed on my end, I will still work just as hard for you to make sure that the new roof gets installed as I did to get the exposed sections covered immediately after construction was complete.  Please contact me when you receive this, I need to resolve this immediately.   Review the attachment thoroughly and print for your records.  I will keep a copy in your file as well.  You took a leap of faith when you decided to go with us as your contractor, "No Additional Costs" means no additional costs.  I have never went back on my word with any customer, and you are no exception.  You trusted us with the original installation, and I have protected your mother[']s interests completely.  At this point I ask that you continue to trust me to protect her interests regarding the installation and finances.  I know it is not common anymore, but believe it or not, there are still some individuals in this world who do the right thing and honor the agreements they made, and you were fortunate enough to stumble across one of them.  (And on a side note, I would appreciate it if I could use you as a reference after the new roof is installed)  Please call me soon.  Thank you, Marc" *See* **Exhibit 15**, E-mail to Jackie, and *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 89-90, and 104, 106.

**RESPONSE:  Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 43 of Plaintiff's Statement of Uncontroverted Facts.**

44.     Jackie Cernetich eventually received the attached proposal, proposing to complete Tamko Warranty services upon request for the

property known as: 412 N. Commercial Crocker Mo 63452, and said "All work to be completed will be covered by manufactures [sic] warranty. The new roof will be installed on the date requested by the homeowners. Vouchers issued from Tamko will be used to provide materials and labor. If for any reason the cost exceeds the voucher amounts, Consolidated Service Group LLC will cover any additional amounts due. [The homeowners at 412 N. Commercial, Crocker MO will have absolutely no out of pocket expenses for the new roof, labor, materials, or any costs related to the roofing project.] The current balance due after credits and adjustments is 7871.00 (Seven Thousand Eight Hundred Seventy One Dollars and 00/100). For your additional security we would request a check in the amount of 4400.00 (Four Thousand Four Hundred Dollars and 00/100) to be made out to [Arrowhead Building Supply]. A check for the remaining balance of 3471.00 (Three Thousand Four Hundred Dollars and 00/100) to be made out to Consolidated Service Group. Lien Waivers for the materials and labor will be issued immediately upon receiving payment." *See* **Exhibit 4**, Deposition of Jackie Cernetich, p. 89-90, and *See* **Exhibit 16**, the proposed attachment.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 44 of Plaintiff's Statement of Uncontroverted Facts; however, Defendants/Third Party Plaintiffs specifically deny that said provision of the Contract obliges Defendants/Third Party Plaintiffs to allow Plaintiff to correct defects in the roof.**

45. Jackie Cernetich did not provide written or verbal notice to remedy any defects. See Exhibit 4, Deposition of Jackie Cernetich, page 44.

**RESPONSE: Defendants/Third Party Plaintiffs admit the allegations contained in Paragraph 45 of Plaintiff's Statement of Uncontroverted Facts.**

Keeping in mind that the Maxeys claim in their second point that there was a material question of fact whether Consolidated abandoned their obligations under the terms of the contract or whether they were prevented from fully performing their obligations under the contract, it is clear there was no issue of fact contended in the summary judgment motions that Consolidated ever abandoned its obligations under the contract. It is clear from the statement of facts that the Maxeys were clear that Consolidated was not allowed to cure any defect and that Consolidated did not abandon the project. The Maxeys' claim that defective tiles were discovered on the first day and

7

on the second day does not constitute a refusal to cure by Consolidated. The third contested "material fact," whether the Maxeys could have "faith" in Benz's offer, alleged by the Maxeys, is not a "fact" that is relevant to this contract. Consolidated offered and attempted to offer to cure any defects on many occasions. The subjective state of mind of the Maxeys is not at issue.

The uncontroverted facts supplied by Consolidated and the responses by the Maxeys are clear that the Maxeys did not allow Consolidated to cure any claims about the defective tiles. It is clear from the record that Consolidated offered a complete new roof at no cost to the Maxeys. The Maxeys did not allow Consolidated to use the vouchers for new tiles that had been given to the Maxeys by the tile company for the defective tiles. The trial court did not err in finding that there were no issues of material fact that Consolidated was prevented from attempting to cure the defects in the roof by the Maxeys. Point II is denied.

As for the Maxeys' first point, that Consolidated did not plead a claim for a breach of contract, we find no merit to the point. To prove its breach of contract case, Consolidated had to prove, first, that a contract existed between plaintiff and defendant. Consolidated did so by stating in its summary judgment motion that Jackie Cernetich had the authority to contract to replace the Maxeys' roof. Further, the Maxeys admit that a contract existed between Plaintiffs and the Maxeys. Second, Consolidated had to prove that Plaintiffs and the Maxeys had certain obligations or duties under the contract. Again, there is no dispute that both parties had obligations and duties under the contract. The Maxeys agreed that they were to pay Consolidated the sum of $8,626.00 under the contract. The Maxeys agree that Consolidated was to provide a satisfactory roof for that

8

price.  In this appeal, the Maxeys do not contend that there was no proof of the first element, that a contract existed.  Nor do the Maxeys contend that both parties had obligations or duties under the contract, thus the second element was satisfied.  Third, Consolidated must have proved that there was a breach of the contract.  As discussed in Point II, if the contractor was prevented from completing the work by the actions of the owners, the owners have breached the contract.  There is no dispute of material fact that the owners prevented the contractor from completing the work, thus, the third element was satisfied.  Finally, Consolidated had to prove damages. Plaintiffs supplied proof in the summary judgment motion that the Maxeys had paid nothing toward the contract and, thus, the contractor was damaged.  Thus, each element for a breach of contract was addressed in the summary judgment motion.

To the extent that the Maxeys are arguing that the roof is not yet completed and, therefore, Plaintiffs may not sue for a breach of contract, they are mistaken.  When the owners prevent the contractor from performing work on the contract, the contractor may either sue on the express contract or on quantum meruit for the value of the labor and materials the contractor has furnished.  *Statler Mfg., Inc. v. Brown*, 691 S.W.2d 445, 448-49 (Mo.App. S.D. 1985).  The Maxeys admit that there is a right-to-cure provision in the contract, therefore, the refusal to give Plaintiffs an opportunity to cure the defect was an anticipatory breach and grounds for proceeding on a breach of contract action even if Plaintiffs had not completed their work.  It was not necessary for Plaintiffs to plead or prove facts that they fully performed or that there was substantial performance.  Point I is denied.

The judgment is affirmed.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

Gary W. Lynch, J. - Concurs

Don E. Burrell, J. – Concurs