James BOSWELL, et al., Appellants,

v.

STEEL HAULERS, INC., Respondents.

No. WD 34218.

Missouri Court of Appeals, Western District.

April 17, 1984.

Steven P. Denton, Eugene F. DeShazo, Denton & DeShazo, Kansas City, for appellants.

Howard D. Lay, Griffin, Dysart, Taylor, Penner & Lay, P.C., Kansas City, for respondents.

Before SOMERVILLE, P.J., and CLARK and BERREY, JJ.

CLARK, Judge.

Appellants received a jury verdict for $143,500.00 against respondent in a contract suit. The trial court sustained respondent's motion for a new trial and plaintiffs below have appealed.

Appellants are the owners of trucks and trailers used to transport freight on the highways. Respondent is an interstate trucking company holding state and federal certificates as a public freight carrier and is primarily engaged in the transport of steel products. For a number of years before and subsequent to the year 1975, respondent contracted with appellants to lease trucks, trailers and drivers which were used by respondent to carry freight for respondent's customers. Written leases, terminable at will by either party, covered each item of equipment used under the arrangement.

The equipment lease contracts all contained essentially the same terms. Each appellant, the owner of the equipment described in the lease, was obligated to furnish to respondent the described unit and pay all maintenance and operating costs. In addition, each appellant was to provide a driver and, as compensation for the total package, respondent agreed to pay appellants 75% of total freight revenue generated by each unit leased. The contract language, critical to this case, read as follows:

"For and in consideration of the leasing of this equipment (and the services of the driver of said equipment) the First Party agrees to pay to the Second Party 75% percent of the gross revenue earned."

As its share, respondent retained the remaining 25% for its services in procuring

the business, dispatching the trucks and billing and collecting the charges.

In actual practice and by apparent mutual understanding between appellants and respondent, the lease obligation of appellants to furnish the services of drivers for the leased equipment was satisfied by the use of drivers paid by and in the employ of respondent. This variant from the literal language of the equipment leases was a necessity for the conduct of the freight operation. Respondent did business as a union shop under a labor agreement with the Teamsters Union. Under the express terms of the labor contract, leased equipment in the service of respondent could only be driven by an employee of respondent. Those employees were, of course, required to be Teamster members. Respondent could not, by reason of the labor agreement accept a freight shipment for transport on a vehicle leased from appellants if appellants tendered the vehicle with a driver as the lease agreements appeared to contemplate.

To accommodate payments under the leases to the situation of respondent employed drivers, respondent computed the lease payments due appellants by deducting from 75% of gross freight revenue the wages and fringe benefits actually paid to or for the benefit of drivers. The balance was remitted to appellants as the compensation for lease of the equipment. The circumstance which led to this suit was appellant's complaint that commencing in April, 1975, the amount charged by respondent for driver compensation was increased without appellants' agreement.

Appellants' petition alleged that the provisions of the labor agreement between respondent and the Teamsters Union were made applicable to the equipment lease agreements between appellants and respondent. The labor agreements were received in evidence in this case. The record leaves some doubt as to the purpose for this allegation and consequent judicial admission on behalf of appellants, but the labor agreements are in the case and they serve at least to confirm the conditions of respon-

dent's freight operation which required all truck drivers to be employees of respondent. It is also to be noted that the labor agreement did not purport to set rates for the lease of equipment unless actually driven by the owner. In that situation, the labor agreement set minimum rates for equipment lease payments and for driver wages. None of the appellants is an "owner-driver" and therefore the labor agreement sets no compensation rate applicable to the lease payments here in dispute.

Although, as noted above, the equipment lease agreements set out only the aggregate of 75% payable as compensation for the truck and driver services, it was necessary to sub-divide the payment to accommodate a situation in which an owner would lease only a tractor without a trailer or a trailer without a tractor. The agreed division of the gross percentage was set at 39% for the tractor, 10% for the trailer and 26% for the driver. This percentage division was later incorporated into a July, 1976 addendum to the equipment leases.

Under the operating arrangement described earlier in this opinion, the lease payments remitted by respondent to appellants were necessarily in such amounts as would, consistent with the agreements of the parties, compensate appellants for use of their tractors and trailers. The arbitrary percentage subdivision of costs between equipment rental and driver services, 49% for equipment and 26% for driver services, was a satisfactory formula as long as wages paid by respondent to the drivers did not exceed 26% of gross freight revenue. When those costs exceeded that amount, as the evidence in the case showed they did, at least from April, 1975, then the difference operated either to reduce the proportion of revenue paid for equipment rental or to reduce the proportion retained by respondent. The ultimate question in the case was who should bear driver costs exceeding 26%, appellants or respondent.

Until April, 1975, respondent apparently absorbed within its 25% certain fringe benefits paid to or for the benefit of drivers and deducted from gross revenues only

those amounts of driver compensation which equaled 26%. The appellants therefore received the full shares of 39% and 10% for tractors and trailers. Commencing in April, 1975, at a time when economic conditions had depressed businesses associated with the steel industry, respondent no longer absorbed the excess driver costs but deducted additional sums from the share of revenue paid to appellants. In this process, no more than 75% of revenue was allocated to the three components, tractors, trailers and drivers, but as driver costs exceeded 26%, the percentages for rental of tractors and trailers decreased accordingly. In varying particulars as to amounts and categories of driver employee benefits, the same calculations for lease payments to appellants continued from 1975 to 1980. Thereafter, by express agreement, the fleet owners assumed the added driver employee costs out of their shares of freight revenue.

In this suit, appellants sought to recover the difference between 49% of gross freight revenue (39% for tractors and 10% for trailers) and the lesser amounts actually remitted by respondent to appellants for the five year period 1975 to 1980. Appellants' position was that the lease agreements committed respondent to the percentage rentals for the equipment and if the driver pay and benefits exceeded the 26%, that excess could not diminish the payments due appellants. Respondent countered by arguing that the lease agreements obligated appellants to furnish the services of drivers and therefore all costs for driver wages and benefits were chargeable to appellants even if the amount exceeded 26% of revenue. Under respondent's interpretation, appellants were entitled to that portion of 75% of gross freight revenue which remained after driver costs were met.

The jury returned verdicts for appellants and on respondent's after trial motion, the court ordered a new trial on the ground that the claim submission, damage and form of verdict instructions were in error. On this appeal, appellants contend these instructions contained modifications from MAI forms required by the facts of the case.

Before discussing the point dispositive of this appeal, some clarification of the approach to the case is necessary. As was noted above, appellants have briefed and argued only the proposition that their tendered and given instructions were correct in using the phrase "damages directly caused by defendant's failure to perform its agreements" in MAI 2.05, MAI 4.01 and MAI 36.01. The trial court stated that the erroneous use of a prejudicial, non-neutral phrase in these instructions constituted the ground on which the new trial was granted.

Respondent's brief urges the error of these instructions and the propriety of the grant of the new trial for the reasons given by the trial court. Respondent also briefs and argues in the affirmative five additional grounds of error not presented or discussed in appellants' brief. These are: (1) Failure of the court to dismiss appellants' petition on the ground the petition did not state a cause of action and failure of the court to enter judgment for respondent because appellants' proof made no case (2) Excess of the verdicts over damages proved (3) Admission in evidence of incompetent and irrelevant exhibits (4) Error in verdict directing instructions and (5) Dismissal of respondent's counterclaim.

Appellants moved to strike respondent's brief as to the five independent points outlined above on the ground that respondent had not appealed and therefore had no standing to present the additional points. That motion was overruled, but appellants have filed no brief which addresses any of these alternate contentions raised by respondent. Apparently, appellants were content to stand on their assertion that the alternate points lacked viability on jurisdictional grounds.

For the reasons hereafter stated, we conclude the trial court was correct in granting a new trial for instruction error, not because of the reasons assigned in the trial court's order, but because of error in the verdict directing instruction. This conclu-

sion is associated with respondent's sub-point (4) above and necessitates a statement of grounds for rejecting appellants' claim that respondent's independent points raised in respondent's brief may not be considered on appeal.

■ The case of *Laclede Investment Corporation v. Kaiser,* 541 S.W.2d 330 (Mo.App.1976) sets out the controlling propositions which cover appellate review in this situation. Where appeal is taken from an order granting a new trial, the order will be affirmed if the ruling by the trial court can be sustained on any of the grounds specified in the motion for new trial. It is therefore appropriate for the party who has obtained the new trial to argue in support of the order on appeal any contentions preserved by motion filed with the trial court. Respondent's sub-point (4) above is such a contention properly raised and argued on this appeal.

■ Before considering the grounds for sustaining the grant of a new trial, it is necessary to address respondent's sub-point (1) which claims, in effect, that appellants made no submissible case. On the authority of *Laclede Investment Corporation v. Kaiser, supra,* and *Wilhelm v. Haemmerle,* 262 S.W.2d 609 (Mo.1953), a defendant may contend on appeal that plaintiff made no submissible case if the appeal is by plaintiff from an order granting a new trial and if the point has been preserved by defendant through timely trial and post-trial motions.

Respondent relies in this aspect of the case primarily on a provision of the Teamster labor agreements calling for mandatory arbitration of disputes. Respondent argues that if the labor contracts are part and parcel of the equipment lease agreements between appellants and respondent, as appellants' petition alleges, then submission of this dispute to arbitration must precede any litigation and the suit here is at best premature.

Examination of the National Master Freight Agreement and Central States Area Supplemental Agreement confirms the inclusion of provisions for arbitration, but discloses no mechanism to resolve a dispute where the union or its members are not parties to the controversy. In fact, the agreements treat only of the relationship between employer and employee. Disputes which arise under the agreements and which are subject to arbitration are those associated with working conditions, rates of pay and benefits, assignment of work and routes and similar subjects addressed by the labor contract. The grievance bodies and committees to which the disputes are submitted are composed of equal numbers of representatives from labor and management, appropriate to the subjects and positions of the contesting parties.

■ Even assuming the relationship between the labor agreements and the equipment leases which appellants' petition alleges, there is not present here any dispute identifiable as one arising under the labor agreement and amenable to the labor agreement grievance procedure. The question in this case is how the equipment leases between appellants and respondent are to be interpreted and applied. The mere fact that the labor contracts to which appellants were not parties have been engrafted upon this dispute by a pleading allegation does not automatically subject appellants to each clause of the labor contract. The provision in the labor contract for arbitration of employer-employee disputes constitutes no ground to dismiss the present suit. Respondent's contention to this effect is rejected.

Respondent also argues that appellants' petition was defective under Rules 52.05 and 55.11 in that the petition was drawn in only one count with a single prayer for damages when in fact the five plaintiffs sought separate damages under separate lease agreements which did not originate in a common transaction or transactions.

■ Assuming but not conceding that the pleading defect is an issue to be raised under the subject of submissibility of the case, the point does not support a motion for a directed verdict. As this case was tried, appellants did not attempt to present

a joint single claim but proved their separate cases. The jury was separately instructed as to the claim of each appellant and separate verdicts were returned. In effect, the presentation as described in the petition was abandoned. We do, however, agree with the trial judge who suggested that appellants amend their unartfully drafted petition before the case is retried.

■ In a final point arguing that a verdict should have been directed for respondent, the freight company contends there was no case because appellants failed to avail themselves of the opportunity to terminate the contracts when they became aware of respondent's interpretation of the driver wage provision, but instead, they continued with the arrangement and signed new leases. As to this point, respondent has provided this court with one-half page of argument in its brief and has cited no authority or rationale to support the contention. We deem the point abandoned. Rule 84.04(d), *Bishop v. Bishop*, 618 S.W.2d 261 (Mo.App.1981).

The trial court did not err in refusing to dismiss the petition and in denying the motion for directed verdicts. The court did err in the content of the instructions which failed to pose the decisive issue in the case.

In its motion for new trial the respondent contended and its affirmative sub-point (4) above reasserts that plaintiffs' verdict directing instructions were in error because they allowed the jury to ignore the lease contract provisions imposing on the equipment lessors the responsibility to provide the services of drivers. The verdict directing instructions, differing only in the name of the plaintiff, were given in the following form:

"Your verdict must be for plaintiff James Boswell if you believe:

First, plaintiff and defendant entered into agreements whereby plaintiff agreed to provide trucks and trailers to defendant and defendant agreed to pay plaintiff 39% of gross revenue earned by defendant for each trip made for defendant with plaintiff's trucks and 10% of gross revenue earned by defendant for

each trip made for defendant with plaintiff's trailers with no deductions for health and welfare benefits, pension benefits, vacation and holiday benefits, motel bills, and sick pay benefits for defendant's drivers, and weight tickets, and Second, plaintiff performed his agreements, and

Third, plaintiff was thereby damaged, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 9."

■ Although neither the briefs nor the record on appeal indicate the source of the instruction, from its content the instruction may be assumed to have been patterned after MAI 26.06. That instruction is appropriate where the jury issues are what agreement was made and whether the agreement was breached. *Braun v. Lorenz*, 585 S.W.2d 102 (Mo.App.1979).

The extended discussion in this opinion of the facts of the case, indulged as a preface, demonstrates that the parties were in sharp disagreement as to what they intended by the phrase in the leases, "and the services of a driver of said equipment." The plaintiffs in the suit contended the driver fringe benefits negotiated between respondent and the union exceeded the compensation for "services of a driver" specified in the leases and were not to be charged to the equipment owners. Tangentially, the dispute was also related to the allocation of the equipment rental payments in percentages assigned to tractors, trailers and drivers. Plaintiffs asserted the intent of that agreement to be a guarantee that the equipment rental payment for tractors would be a constant 39% of gross revenue and the amount for trailers would be 10%.

■ The equipment leases in this case are subject to a latent ambiguity, that is, an ambiguity which arises where a writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. *Campbell v. Dixon*, 647 S.W.2d 617, 621 (Mo.App. 1983). The source of ambiguity is not to be

found on the face of the documents, which employ relatively straightforward language, but in the external circumstance of driver related compensation in excess of the assumed base of 26% of gross freight revenue. Only when that development, originating in the labor agreement with the union, intrudes upon the equipment leases does the percentage division of revenues as set out in the leases fail. The question of whether appellants or respondent bear the burden of driver costs in excess of 26% of gross freight revenue cannot be answered with certainty from the leases. This uncertainty demonstrates the presence of an ambiguity.

■ Where a contract is ambiguous, recourse must be had to evidence of external matters, bearing in mind the cardinal principle that the object is to determine the true intent of the parties. Appropriate for consideration are the relationship of the parties, the circumstances surrounding execution of the contracts, the subject matter of the contracts, the acts of the parties in relation to the contract and any other external circumstances which would cast light on the intent of the parties. *N.B. Harty General Contractors, Inc. v. West Plains Bridge and Grading Company, Inc.*, 598 S.W.2d 194, 197 (Mo.App.1980).

■ The fault with the verdict directing instructions as given in this case is that they did not direct the attention of the jury to the term of the equipment leases in dispute and did not list the factors bearing on the jury's function to decide the issue. Instead, the instructions merely hypothesized appellants' argument that they were entitled to the fixed percentages for tractor and trailer rentals without deductions for driver fringe benefits. The instructions made no mention of the contract term "services of the driver" and did not require the jury to decide what the parties' intent was as to this aspect of the contract.

In a comparable situation, this court provided guidance for drafting of instructions in cases where the terms of a bilateral contract are in dispute. In *Busch & Latta Painting Corporation v. State Highway Commission*, 597 S.W.2d 189, 200 (Mo.App. 1980), it was said:

"In any case where an issue of ambiguity exists, the terms of the contract are in dispute; and MAI 26.06 must be the starting point for instruction of the jury. MAI 26.06 is a plaintiff's verdict director and, in the instant case, should set out the claim of the plaintiff as to the contract meaning in paragraph first and the claimed breach of defendant in paragraph third. In addition to this instruction and the burden of proof instruction, some guideline by way of instruction must be tendered to the jury to direct them in their finding as to the terms of the contract in a case such as the instant one. Such an instruction should direct the jury to the issue to which it applies."

In the application of the equipment leases here to the claim by plaintiffs that defendant had underpaid the contracted rentals, it was necessary to construe and declare the meaning of the agreements and the intention of the parties with respect to the term "services of drivers." Plaintiffs' verdict directing instructions should therefore have presented their contention, that the intent of the contracting parties was to obligate plaintiffs as the equipment lessors to defray the costs for services of truck drivers only to amounts not exceeding 26% of gross freight revenue. An additional instruction should have directed the jury to factors bearing on the contract construction issue.[1]

It will be noted that appellants' verdict directing instruction as given, quoted earlier in this opinion, did postulate the contention that deductions were not to be made from equipment rentals for driver fringe

---

1. An instruction in this form with a notation referring to *Busch & Latta Painting Corporation v. State Highway Commission, supra,* was tendered by respondents to the trial court but was refused. This added directional instruction, however, would not have cured the error in the primary verdict directors and would have had little jury significance coupled with the verdict directors used.

benefits, but that was not the issue of contract interpretation in the case. As was detailed earlier in this opinion, appellants' theory was that equipment rental payments under the leases could not be reduced below 49% of gross freight revenues on account of driver related expenses. So long as the 49% was paid, however, the classification of driver service expense as hourly wages, fringe benefits or other remuneration was irrelevant. The instruction as given was not rehabilitated by the list of driver expenses which did not focus attention on the issue of contract interpretation essential to the verdict. A new trial was properly ordered in the case, not necessarily for the reason stated by the trial court but for error in the verdict directing instructions.

In the foregoing discussion, the principal point of appellants' brief, the absence of error in the instructions specified by the trial court as the ground for granting the new trial, has not been considered. The point turns on the issue of whether reference in several instructions to the failure of defendant to perform its agreements was an impermissible and prejudicial deviation from MAI. In view of the error in the more fundamental verdict directing instructions which requires affirmance of the new trial order, the significance of the other instruction error, if such it be, is reduced. Moreover, under a correct verdict director, the other instructions may well conform to a different pattern. Suffice it to say that the claim of prejudice because of the substitution of the not in MAI phrases is not pertinent because the issue in the case is not whether respondent breached the agreement. Instead, the case turns on a construction of the contract from which the duty of respondent's performance follows. It may reasonably be assumed that subsequent instructions will be re-drafted accordingly.

Affirmance of the new trial order will require further proceedings in the case and, to this end, comment on certain propositions applicable to cases of ambiguous contracts is appropriate.

If a contract clearly and unambiguously expresses the intent of the parties, it is the duty of the court to state the intended meaning as a matter of law, but if the contract is ambiguous, the court will receive evidence as to the intent of the parties. *Wilson v. General Mortgage Co.*, 638 S.W.2d 821, 823 (Mo.App.1982). The mere fact that the parties disagree as to the meaning of a contract does not establish ambiguity. A contract is ambiguous only when it is reasonably susceptible of different constructions. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Whether an ambiguity exists in the contract is a question of law which must be decided before determination of the allegedly ambiguous language is undertaken upon evidence. *Phillips v. Authorized Investors Group*, 625 S.W.2d 917, 919 (Mo.App.1981). Where a contract is ambiguous and resort to extrinsic evidence is necessary, a jury case is made if the evidence is conflicting or if different conclusions may reasonably be drawn from the evidence but if there is no real conflict of evidence on any essential facts and the meaning of the words used is made clear by the evidence, it becomes the duty of the court and not the jury to construe the contract. *Commerce Trust Company v. Howard*, 429 S.W.2d 702, 705–706 (Mo.1968).

The principal discussion in this opinion has proceeded on the assumption that submission of the case inferentially presupposes a determination by the trial court as a matter of law that the equipment leases are ambiguous in relation to deductions for driver services. While that determination is viewed in the context of this appeal as sustainable, having due regard for deference to the latitude accorded the trial court, the issue is not to be construed by the content of this opinion as foreclosed from consideration on remand. The trial court should therefore consider and rule initially whether the lease agreements are ambiguous and, if not, the intended meaning of the contracts should be declared by the court as a matter of law.

If, as was the presumed result on consideration of the cause in the trial last concluded, it be again determined that the agreements are ambiguous, the court will be well advised to consider whether the extrinsic evidence produced or tendered makes a jury issue. The points available for consideration on this appeal do not pose these questions, the comments being intended only to serve as guidance to the parties and the court on retrial.

The order granting respondent a new trial is affirmed and the case is remanded for proceedings consistent with this opinion.

All concur.