Jeffrey A. WESTERHOLD, et al., Plaintiffs–Appellants Cross–Respondents,

v.

MULLENIX CORPORATION, et al., Defendants–Respondents Cross–Appellants.

No. 55225.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 29, 1989.

Jack F. Allen, Clayton, for Westerhold.

James L. Durham, Chester A. Love, Jr., David B. Lacks, Clayton, for Mullenix Corp.

SATZ, Judge.

This is a consolidated appeal from a final judgment in a case in which plaintiffs sought money damages and the imposition of mechanic's liens. Plaintiffs are the statutory trustees of Dimarco Management, Inc. (Dimarco), a Missouri corporation whose charter has been forfeited. Dimarco was the subcontractor on the construction in question. Defendants are Ivan L. Mullenix (Mr. Mullenix), the owner of the properties in question; Mullenix Corporation, the general contractor; and the trustee and cestui que trust under a deed of trust on the properties.

This action stems from two written construction contracts between Dimarco and Mullenix Corp. Plaintiffs, however, did not sue Mullenix Corp. on these contracts. Plaintiffs brought suit in a two Count petition. In Count I, plaintiffs sued Mullenix Corp. for money damages for work, labor, and materials furnished by Dimarco at the Boardwalk Retail Center (Boardwalk) and for an imposition of a mechanic's lien on this property. In Count II, plaintiffs sued

Mullenix Corp. for damages for work, labor, and materials furnished by Dimarco at Building # 24 of the Briarcliff Condominiums (Briarcliff) and for an imposition of a mechanic's lien on this property.[1] Defendant Mullenix Corp. filed two counterclaims for money damages against plaintiffs for breach by Dimarco of each of the two construction contracts, one contract for construction work on Boardwalk, the other for construction work on Briarcliff.

At the close of all the evidence, the court granted Mullenix Corp.'s motion for directed verdict on plaintiffs' request for imposition of a mechanic's lien on Boardwalk but denied a similar motion on plaintiffs' request for a mechanic's lien on Briarcliff. Mullenix Corp. then withdrew its counterclaim against plaintiffs for breach of the Boardwalk contract.

Subsequently, the court instructed the jury on plaintiffs' claims and Mullenix Corp.'s remaining counterclaim for damages but gave no instruction on the issue of a lien on Briarcliff. The jury returned verdicts for damages in favor of plaintiffs on each of their two claims and returned a verdict against Mullenix on its counterclaim. The trial court entered judgment in favor of plaintiffs for the money damages but did not impose a mechanic's lien on either Boardwalk or Briarcliff. Mullenix Corp. appeals, challenging the sufficiency of the evidence as well as the plaintiffs' verdict-directing instructions. Plaintiffs appeal, challenging the court's failure to impose a mechanic's lien on each of the two properties in question. We affirm the money judgment, and remand with directions to impose the lien on Briarcliff as requested by plaintiffs.

*Facts*

Dimarco and Mullenix Corp. entered into the Boardwalk contract on July 17, 1984. Under this contract, Dimarco promised to do carpentry and metal framing work for a total contract price of $72,900. Mullenix Corp. agreed to pay Dimarco each month according to the percentage of the contract

---

1. Plaintiffs also requested these liens be adjudged prior liens "to the lien of the deed of trust and security agreement" held by the trustee and cestui que trust.

work Dimarco completed each month. Invoices that Dimarco submitted on the 30th day of the month would be paid on the 25th day of the following month.

A dispute arose between the parties over amounts due on the December, 1984 invoice. They resolved this dispute by Mullenix Corp. agreeing to make three payments on the invoice. The third payment, in the amount of $11,520, was not made. Mullenix also refused to make any payment on the January, 1985 invoice in the amount of $5,015. On February 25, 1985, Dimarco stopped work because of Mullenix Corp.'s failure to pay these invoices. Dimarco submitted another invoice on February 25, 1985, for $6,870, which Mullenix Corp. did not pay. The total of all unpaid invoices for Boardwalk is $23,405, the amount plaintiffs sought in Count I of their petition.

Dimarco and Mullenix Corp. entered into the Briarcliff contract on October 2, 1984. This contract required Dimarco to do carpentry work for a total price of $42,000, and the payment schedule required Dimarco to submit its invoices by the 25th day of the month for payment on the 25th day of the following month. The contract provided that any modification must be in writing and provided that Mullenix Corp. need not pay any claim for extra work that Dimarco did without first obtaining written authorization.

A dispute arose under the Briarcliff contract over the payment of invoices, some containing charges for "extra work". According to Harold Westerhold (Westerhold), Dimarco's *de facto* head, Mullenix Corp.'s project manager, Valerie Edwards, gave verbal authorization for "extra work" and orally agreed to make payments on the invoices five days after Dimarco submitted them. The invoice submitted by Dimarco on January 19, 1985, for $3,150, included charges for "extra work". The invoice was not paid by January 25, 1985, and Dimarco stopped work. On January 31, 1985, Dimarco submitted a final invoice for $6,294.50. The January 31 invoice was the result of Dimarco "calculat[ing] all of the extra work and [bringing] it up to date." The January 31 invoice did not include the charges for "extra work" from the January 19 invoice. From the record, it is unclear whether the final invoice includes the "extra work" from the November, 1984 or December, 1984 invoices. The total of the two unpaid invoices is $9,444.50. That is the sum sought by plaintiffs under Count II of their petition.

After trial, the court entered a judgment on the jury verdicts for the plaintiffs, on Count I for $23,405 and on Count II for $9,444.50. No liens were imposed. Subsequently, plaintiffs moved to amend the judgment seeking prejudgment interest and the imposition of the mechanic's liens. The court granted the request for prejudgment interest but imposed no liens. The court then denied Mullenix Corp.'s post trial motion. These appeals followed.

### I. *Mullenix Corp.'s Appeal*

#### 1. *Plaintiffs' Verdict Directing Instructions*

Mullenix Corp. challenges plaintiffs' verdict directing instructions. Mullenix Corp. contends the "jury was instructed on an action on account when plaintiffs were suing on a lump sum contract or in quantum meruit", and, therefore, Mullenix Corp. contends it was prejudiced by the submission to the jury of a theory different from the theory pleaded and tried. We view the record differently than Mullenix Corp. does.

There is no dispute that the initial legal relations between Dimarco and Mullenix Corp. were created by two written construction contracts, under each of which Mullenix Corp. was obligated to pay Dimarco the contract price in installments. Nor is there any dispute that Mullenix Corp. refused to pay certain of these installments. If Mullenix Corp.'s refusal to pay was a substantial breach of contract, then Dimarco had the privilege to treat the contract as terminated and had the right to sue Mullenix Corp. either for breach of contract and the unpaid contract price, or for quantum meruit and the reasonable value of work, labor and materials actually rendered and used in the performance of the contract before the breach. *See, e.g.*

*Statler Mfg., Inc. v. Brown,* 691 S.W.2d 445, 448–49 (Mo.App.1985).

Plaintiffs, however, did not exercise either of these rights. They, apparently, chose to sue Mullenix Corp. on an account. Thus, in Count I of their petition, plaintiffs pleaded Mullenix Corp. is "indebted" to Dimarco for "work, labor and materials furnished by" Dimarco "under a lump sum contract (which was not fully completed) with and at the special instance and request of Mullenix Corp."; Mr. Mullenix was the owner of the property in question "at and during the accrual of plaintiffs' account"; all the "work, labor and materials furnished by Dimarco under the contract with Mullenix Corp. are ... set out in detail and ... itemized in the account filed ... [and] set forth" in the exhibit attached to the petition; and Dimarco "commenced the furnishing of ... work, labor and materials on June 27, 1984 and continuously thereafter until March 3, 1985," and on the "last mentioned date ... the said account then accrued and became due; the same was furnished under one continuous arrangement; the said account constitutes one continuous running and connected account ... all ... furnished ... [at] ... the instructions and directions of defendant Mullenix Corp." [2] (LF 85–88) Consistent with this pleading, plaintiffs submitted their case to the jury by using MAI 26.03, the pattern instruction for an "Action on Account": [3]

### Plaintiffs' Instruction No. 7

Your claim must be for plaintiffs on their claim for material and labor on the Boardwalk Retail Center if you believe:

First, at the request of defendant Mullenix Corporation, plaintiffs' predecessor,

Dimarco Management, Inc., doing business as Dimarco Contractors, or plaintiffs, furnished to defendant Mullenix Corporation certain materials and labor on the Boardwalk Retail Center job between August 20, 1984 and March 3, 1985, and

Second, Dimarco and plaintiffs charged a total of $63,500 for such materials and labor, of which only $40,095 was paid, and

Third, the charges were reasonable.

None of the defendants ever questioned the propriety of plaintiffs' pleadings; for example, no defendant filed a motion for summary judgment; nor, from the record, does it appear any defendant made any specific objection to or raised any question about plaintiffs' pleaded theory during the course of trial. To be sure, defendants filed motions for a directed verdict "at the close of plaintiffs evidence" and "at the close of all the evidence." But these motions merely make the general and vague allegation that "Plaintiffs have failed to make a submissible case in either Count I or Count II of Plaintiffs' Petition." This raises no identifiable issue about the propriety of either plaintiffs' pleadings or proof. Moreover, at the close of all the evidence, the trial court held an instruction conference on the record, and, consistent with their silence throughout the trial, defendants made no objection to or raised any question about the submission of plaintiffs' claim using MAI 26.03, the pattern instruction for an "Action on Account," instead of MAI 26.05, the pattern instruction for "Quantum Meruit." [4]

Furthermore, Mullenix Corp.'s assertions in its post trial motion for judgment nov or for a new trial are non-specific and, thus,

---

**2.** Plaintiffs' allegations in Count II track these allegations.

**3.** MAI 26.03 provides: "Action on Account"
Your verdict must be for plaintiff if you believe:
First, at defendant's request plaintiff furnished [to defendant] [to (name of third party)] certain (describe goods furnished) between _____, 19__ and _____, 19__, and
Second, plaintiff charged a total of $_____ for such goods, and

Third, plaintiff's charges were reasonable.

**4.** MAI 26.05 provides: "Quantum Meruit"
Your verdict must be for plaintiff if you believe:
First, plaintiff furnished (here describe generally the goods or services) to defendant, and
Second, defendant accepted such [goods] [services].

not much more informative. In that motion, Mullenix Corp. complains that plaintiffs' verdict-directing instructions were erroneous because "Plaintiffs acknowledged the existence of a lump sum contract which was not fully performed and, therefore, the jury should have been instructed on quantum meruit instead of an action on account." (See Appendix) This bald, general statement tells the trial court nothing about the specific defects perceived by Mullenix Corp. in the plaintiffs' verdict-directing instructions.

MAI 26.03, "Action on Account," and MAI 26.05, "Action for Quantum Meruit," are almost mirror images. The former requires the jury to find goods were furnished to the defendant by the plaintiff at the defendant's request, and the latter requires the jury to find goods or services were furnished to the defendant and the defendant accepted the goods or services. A lay jury required to find a defendant liable for goods or services furnished by a plaintiff would find no significant difference between the defendant "requesting" the goods or services, MAI 26.03, and the defendant "accepting" the goods or services, MAI 26.05.

This is not to say there are no significant legal differences in the language used in these two pattern instructions when their respective language is viewed as legal jargon, nor is it to say there may not be significant differences when their respective language is viewed in the light of a specific fact situation. But, Mullenix Corp.'s complaint in its post trial motion does not specifically point out any of the possible differences it perceives nor does it explain why these perceived differences prejudiced it. These perceived differences are presented by Mullenix Corp. for the first time to us on appeal, and, thus, these differences are not properly preserved for our review. *E.g. Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 524 (Mo.App. 1980); Rule 78.07.

More important, perhaps, Mullenix Corp. would not prevail even if we would consider those specific assertions and accompanying arguments now urged on appeal and which may be relevant to the general issue raised in its post trial motion. Mullenix Corp. now argues that, in "construction contract cases", MAI 26.03 is to be used only for those contracts which are "time-and-material" contracts. The contracts here, Mullenix Corp. contends, were "lump sum contracts" and Dimarco's submitted invoices for progress billing "were supposed to reflect percentage of the subcontract work completed, not charges for time and material." Therefore, Mullenix Corp. argues, Dimarco's remedy, if Dimarco were not in default, would be a suit to recover as damages that percentage of the contract price equal to the percentage of the work performed, less any amounts already paid.

Alternatively, Mullenix Corp. argues that plaintiffs' verdict-directing instructions, patterned on MAI 26.03, are not suitable substitutes for quantum meruit instructions, patterned on MAI 26.05. More specifically, Mullenix Corp. contends plaintiffs' instructions assumed outstanding balances that were in dispute and the instructions did not require the jury to find Mullenix Corp. accepted or was benefited by the work and material furnished by Dimarco. Mullenix Corp.'s arguments are misdirected and, thus, miss the mark.

To address these arguments, we need no extended discussion of the historical antecedents of an action in quantum meruit. *See*, Dobbs, *Remedies*, § 4.2 *Restitution at Law*, pp. 232–240 (1973). Suffice it to say that an action in quantum meruit was and is a remedy of restitution. *Id.* "The form of action at common law that was used to obtain the remedy of restitution was Assumpsit, . . . ." 5 Corbin, *Contracts*, § 1102, p. 549 (1964).[5] Assumpsit is now reflected in some legal relations we now

---

**5.** "If the performance rendered by plaintiff and received by the defendant was a money payment, the appropriate common count for asking its restitution was the count for 'money had and received'; . . . If [the performance] was services rendered, the count was for 'work and labor,' the reasonable value of which was described in Latin as 'quantum meruit.'"
Corbin, *supra* at 550.

characterize as "contractual", and the restitutionary remedy of quantum meruit has followed those relations. Dobbs, *supra* at 234–235. But, to state the obvious, the remedy of quantum meruit varies with the particular "contractual" relations in issue.

■ Contracts are created by promissory expression. The expression of the promise may be verbal or by conduct. *Kosher Zion Sausage Co. v. Roodman's, Inc.*, 442 S.W.2d 543, 546 (Mo.App.1969). When the parties express their promises in explicit oral or written words, the contract is labeled: express. *Kohn v. Cohn*, 567 S.W.2d 441, 446 (Mo.App.1978). When they manifest their promises by language or conduct which is not explicit, the contract is labeled: implied in fact. *Id.* The only difference in the two is the manner of manifesting mutual assent. *Bailey v. Interstate Airmotive, Inc.*, 358 Mo. 1121, 219 S.W.2d 333, 338 (1949). In either case, the essential question is the degree of effectiveness of the expression used.

■ On the other hand, a contract "implied in law" or "quasi-contract" "is not a contract at all but an obligation to do justice even though it is clear that no promise was ever made or intended." Calamari and Perillo, *Contracts*, § 1–12 (2d ed. 1977); *see e.g., Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo.App.1984). This non-contractual obligation is treated procedurally as if it were a contract, but its principal function is to prevent unjust enrichment. *Id.*

MAI 26.05 is appropriate for use when the legal relation between the parties is a contract "implied in law" or "quasi-contract." *See, e.g. Bennett v. Adams*, 362 S.W.2d 277, 281 (Mo.App.1962).[6] Thus, this form does not submit the issue of the defendant's "request" to the jury, because an "implied in law" contract does not rest on the defendant's request. It does rest, however, on the defendant's "acceptance"; i.e. the defendant's retention of the goods and services, and, therefore, the issue of the defendant's "acceptance" is submitted to the jury. MAI 26.05; *Green Quarries, Inc. v. Raasch, supra* at 264.

MAI 26.05, however, is not appropriate for the situation, where, as here, the remedy of quantum meruit may be pursued for breach of an express contract. In this situation, the plaintiff provides his work and material pursuant to a written contract. The plaintiff's right to the reasonable value of his work and material prior to his complete performance is created only by a substantial breach of the express contract by the defendant. *Statler Mfg., Inc. v. Brown, supra*, 691 S.W.2d at 448–449; *Curators v. Nebraska Prestressed Concrete*, 526 S.W.2d 903, 907–08 (Mo.App.1975).[7] Without this breach, plaintiff is not entitled to the reasonable value of his work and material. *Curators* at 907–08.[8]

Consequently, the issue of Mullenix Corp.'s substantial breach of the express contract is significant here. But, MAI 26.-05 does not submit that issue to the jury. Moreover, MAI 26.05 submits the issue of a defendant's "acceptance" of the goods or services provided by the plaintiff. But in most express contract cases giving rise to the remedy of quantum meruit, the defen-

---

6. This case is cited in the Committee's Comment as support for the instruction.

7. We do not address the issue of a plaintiff in default on a written contract attempting to sue a defendant in quantum meruit when the defendant is not in default. *See, Curators, supra.*

8. This remedy of restitution is often described as "quasi-contractual".
"It happens that the remedy of restitution, when an express contract has been broken, is quite similar to the remedy that has been made available under the name of quasi-contract in cases where there were no expressions of agreement at all. This is the explanation why restitution has been frequently described as a quasi-contractual remedy in common law."
Corbin, *supra* at 572.
Moreover, even though the remedy of quantum meruit is, at times, said to exist primarily to prevent unjust enrichment, *see, S.W. Bell Telephone Co. v. United Video Cablevision*, 737 S.W.2d 474, 475–76 (Mo.App.1987), the remedy, when used for breach of an express contract, "does not depend wholly upon the idea that the defendant has been unjustly enriched by the part performance rendered by the plaintiff. There need be no addition to his material wealth, either permanent or temporary."
Corbin, *supra* at 577; *see, Statler Mfg., Inc. v. Brown, supra.*

dant, like Mullenix Corp. here, has not "accepted" the plaintiff's work and material, in the sense "accepted" is used either in common parlance or legal jargon. To the contrary, the defendant, like Mullenix Corp. here, vigorously rejects the work and material provided by the plaintiff. Thus, MAI 26.05 is an inappropriate instruction where, as here, the remedy of quantum meruit may be pursued for breach of contract.

The appropriate submission in this kind of case would require the jury to find: (1) the plaintiff properly furnished work and material to the defendant pursuant to an express contract or agreement, (2) a substantial breach of that contract or agreement by the defendant, and (3) the reasonable value of the work and materials furnished the defendant by plaintiff prior to defendant's breach.[9] Arguably, plaintiffs' verdict directing instructions here track this kind of submission in part: the jury is required to find that Dimarco "furnished" work and material to Mullenix Corp. at the corporation's "request" and also is required to find the reasonable value of this work and materials. But, plaintiffs' instructions do not submit the issue of Mullenix Corp.'s breach of contract to the jury. Thus, if these instructions prejudiced defendants, they prejudiced defendants because the issue of defendants' breach was not submitted to the jury.

But, defendants never raised this issue at any time prior to or during trial, and, certainly, Mullenix Corp. did not raise this issue in its post trial motion.[10] Simply stated, Mullenix Corp. preserved no real challenge to plaintiffs' instructions for us to review. *Hensic v. Afshari Enterprises, Inc., supra,* 599 S.W.2d at 524. When all was said and done, this case was tried on the issues defined by plaintiffs, and defendants never properly challenged those issues.

**9.** In Missouri, this value may not exceed the contract price. *Waddington v. Wick,* 652 S.W.2d 147, 151 (Mo.App.1983).

**10.** We do not base our opinion on the holdings and teachings of *Hudson v. Carr,* 668 S.W.2d 68

### 2. *Sufficiency of the Evidence*

■ In their post trial motion, Mullenix Corp. complained the verdicts were "against the weight of the evidence." (See *Appendix*) We do not review challenges to the weight of the evidence. *Christie v. Weber,* 661 S.W.2d 840, 841 (Mo.App.1983). We assume, as plaintiffs apparently did, that Mullenix Corp. challenged below and is challenging now the sufficiency of the evidence to make a submissible case on each of plaintiffs' two Counts. To determine submissibility, we accept as true the evidence and reasonable inferences that support the verdicts and disregard all evidence and inferences to the contrary. *Affiliated Foods, Inc. v. Strautman,* 656 S.W.2d 753, 763 (Mo.App.1983).

Mullenix Corp. first contends that plaintiffs failed to establish a justifiable reason for stopping work and for failing to perform their obligations under the contracts. Mullenix Corp. concedes that an unjustified failure by it to make timely payments would excuse Dimarco from complete performance. *Hart and Son Hauling, Inc. v. MacHaffie,* 706 S.W.2d 586, 588 (Mo.App. 1986). Mullenix Corp., however, contends that plaintiffs' evidence concerning the modification of the time for Mullenix Corp.'s payments is so contradictory that it lacks all probative force.

We have carefully read the record. Mullenix Corp.'s examples of conflict in plaintiffs' evidence are either facially not contradictory or easily reconcilable. The jury assessed the credibility of the witnesses, and it was free to believe some, all or none of the plaintiffs' evidence. *Concordia Lumber Co. v. Davis,* 696 S.W.2d 851, 854 (Mo.App.1985).

Mullenix Corp. also argues that, under the Boardwalk contract, it had a right to determine whether the charges on any invoice were reasonable. More specifically, it contends that it disputed Dimarco's in-

(Mo. banc 1984) and *Fowler v. Park,* 673 S.W.2d 749 (Mo. banc 1984) and their progeny. *See Nakata v. Pratte Cnty. R-3 School Dist.,* 750 S.W.2d 669, 672–674 (Mo.App.1988).

voices and was withholding payment only on the disputed portion. Even assuming this is correct, Mullenix Corp. would be under a duty to exercise its right reasonably. There is evidence from which the jury could find that Mullenix Corp. acted unreasonably.

Westerhold testified about a meeting he had with several Mullenix personnel. At that meeting, they discussed how much work remained. The dispute arose, according to Westerhold, because Mullenix Corp. inflated the cost of the work remaining. The amount of work done was determined by taking the total cost for the job and subtracting the cost of what remained. By overvaluing what remained, Westerhold testified, Mullenix Corp. unreasonably undervalued what Dimarco had already done. This evidence is sufficient to support the jury's findings.

Mullenix Corp. also argues the evidence did not support the jury's finding that the amounts awarded were reasonable. The January 31, 1985 Briarcliff invoice, Mullenix Corp. contends, included charges for "extra work" for which Dimarco had already billed. This contention, however, is based upon Mullenix Corp. interpreting Westerhold's testimony concerning the January 31, 1985 invoice in the light most favorable to it.

Viewing the testimony in the light most favorable to the plaintiffs, as it must be in this appeal, the jury could have found that the January 31, 1985 invoice did not include "extra work" from previous invoices. It is clear the January 31 invoice did not include "extra work" from the January 19 invoice. From this, the jury could infer that extra work from previous invoices was not included in the January 31 invoice. More important, perhaps, Westerhold emphatically denied that the January 31 invoice included any work already billed in the January 19 invoice. The jury, apparently, chose to believe him, and this strengthened the inference.

As to Boardwalk, Mullenix Corp.'s argument that the evidence does not show the balance due was reasonable focuses only on Dimarco's charges up to December 31, 1984. The record shows Dimarco worked through February 26, 1985. Moreover, Westerhold testified the invoices establishing the charges were for materials on the Boardwalk job, the cost of this material was Dimarco's cost plus a reasonable markup and the labor costs were reasonable. From this testimony, the jury could have found that the invoices were reasonable.

Mullenix Corp. also argues the modification requiring accelerated payment was not supported by consideration. Defendants, however, failed to raise this issue in their post trial motion. (See Appendix) Therefore, it is not preserved for appeal. *Hensic v. Afshari, supra,* 599 S.W.2d 524.

## II. *Plaintiffs' Appeal*
### *Mechanic's Liens*

Plaintiffs appeal the trial court's refusal to grant them liens on the properties in question. We affirm the Court's refusal as to Boardwalk, we reverse as to Briarcliff.

### *Boardwalk*

Under § 429.080 RSMo 1986, a subcontractor must file its lien statement with the clerk of the circuit court "within four months after the indebtedness shall have accrued...." The lien statement regarding Boardwalk was filed on June 29, 1985. The statutory time period begins to run on the last date that labor was performed or materials incorporated in construction of the building by the claimant. *Farmington Building Supply Co. v. L.D. Pyatt Construction Co.,* 627 S.W.2d 648, 651–52 (Mo. App.1981).

Plaintiffs argue the indebtedness accrued on March 3, 1985. Plaintiffs, however, offered no evidence at trial showing the nature of the work done on March 3. Plaintiffs' evidence merely shows two of its employees were at the job site on March 3, each for four hours. To state the obvious, a mechanic's lien cannot be imposed if the nature of the work done does not entitle the claimant to a lien. *Utley v. Wear,* 333 S.W.2d 787, 789 (Mo.App.1960). At best, the record shows the work done to support

a lien was completed on February 26, 1985, more than four months before June 29, 1985, the date the lien statement was filed; therefore, the trial court properly denied plaintiffs' request for the imposition of a lien on Boardwalk. § 429.080 RSMo 1986.

### Briarcliff

The trial court denied defendants' motion for a directed verdict on the request for an imposition of a lien on the Briarcliff property. Defendants argued at trial that plaintiffs failed to comply with § 429.170 RSMo 1986, because plaintiffs' suit, requesting this lien, was not "commenced until November 27, 1985, more than six (6) months after the filing of plaintiffs' mechanic's lien herein."

■ Plaintiffs filed suit on November 25, 1985. The six month filing period expired on November 24, 1985, a Sunday. Because the final day for filing was a Sunday, that day is excluded from the time period, and November 25, the following Monday, became the last day for filing. *See* § 1.040 RSMo 1986; *Herrman v. Dixon*, 285 S.W.2d 716, 718 (Mo.App.1956); Rule 44.01. Therefore, suit was filed timely, and the trial court's denial of defendants' motion for a directed verdict was correct.

■ Despite this record, however, the trial court refused to impose a mechanic's lien on Briarcliff. Plaintiffs now argue they are entitled to this lien because there was no real factual dispute at trial about the lien. Defendants now counter that an instruction on this lien was never submitted to the jury and, therefore, defendants contend, Dimarco abandoned its request for the imposition of the lien. We disagree with defendants.

■ When a fact material to a party's case is conceded or undisputed, its inclusion under an approved jury instruction is not mandatory. *McPherson v. Bi-State Development Agency*, 702 S.W.2d 129, 132 (Mo. App.1985). Similarly, here, the failure to instruct the jury on the mechanic's lien on Briarcliff was not fatal to plaintiffs' request, because the trial court apparently resolved the only contested issue, the timeliness of filing the lien statement.

Accordingly, the money judgment entered in favor of the plaintiffs and against Mullenix Corp. is affirmed, and this cause is remanded to the trial court with the direction to enter the appropriate judgment imposing the lien on the Briarcliff property as requested by the plaintiffs.

SMITH, P.J., and STEPHAN, J., concur.

### APPENDIX

### STATE OF MISSOURI COUNTY OF ST. LOUIS

### IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS STATE OF MISSOURI

JEFFREY A. WESTERHOLD, et al., Plaintiffs,

vs.

MULLENIX CORPORATION, et al., Defendants.

Cause No.: 535110

Division 18

MOTION OF DEFENDANT MULLENIX CORPORATION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Comes Now Defendant, Mullenix Corporation, and moves this Court to enter judgment in favor of Mullenix Corporation and against Plaintiffs on Counts I and II of Plaintiffs' Petition, notwithstanding the verdict of the jury or, in the alternative, to grant said Defendant a new trial as to said Counts; in support of its Motion, Defendant states as follows:

1. That the Court erred in entering judgment on Plaintiffs' claim for material and labor on the boardwalk retail center because said verdict was against the weight of the evidence in the following respects:

a. The evidence did not substantiate Plaintiffs' claim for materials and labor

and the Plaintiffs' evidence showed that charges were assessed for material not used in the performance of the subcontract;

b. The evidence establishes that Plaintiffs breached the contract prior to any alleged breach by Defendant in that Plaintiffs refused to continue performance of the subcontract at a time when Defendant fully performed its obligations under said subcontract.

2. The Court erred in entering judgment on Plaintiffs' claim for materials and labor on the Briarcliff Condominium subcontract because said verdict was against the weight of the evidence in the following respects:

a. The evidence does not substantiate Plaintiffs' claim for "extra work" because Plaintiffs failed to offer any evidence to show that the alleged work was not part of the performance of the subcontract;

b. The evidence shows the Plaintiffs breached the subcontract prior to any alleged breach by Defendant in that Plaintiffs refused to continue work at a time when Defendant had fully complied with the terms of the subcontract;

c. The evidence shows that Plaintiffs breached the subcontract prior to any alleged breach by Defendant in that Plaintiffs permitted the filing of a mechanic's lien on the Briarcliff Condominium property by an employee or former employee of Plaintiffs.

3. The Court erred in giving Instructions 7 and 10 (Plaintiffs' Verdict Directors) to the jury because Plaintiffs acknowledged the existence of a lump sum contract which was not fully performed and, therefore, the jury should have been instructed on quantum meruit instead of an action on account.

WHEREFORE, Defendants move this Court to enter judgment in favor of Defendant or to grant Defendant a new trial and for such other and further relief as the Court deems just and proper in the premises.

LOVE, LACKS & PAULE
By: James L. Durham

James L. Durham, MBE # 29719
Attorneys for Defendants
7701 Forsyth, Suite 680
Clayton, MO 63105
(314) 863-4100

Copy of the foregoing mailed this 30th day of June, 1988, to: Jack F. Allen, Attorney for Plaintiffs, 7701 Carondelet, Suite 400, Clayton, Missouri 63105.

James L. Durham