Mike J. RAYSIK, d/b/a Mike J. Raysik Excavating Co., Respondent,

v.

Bernie P. STANDIFORD, et al., Appellants.

No. WD 52769.

Missouri Court of Appeals, Western District.

April 29, 1997.

C.E. Weedman, Jr., Harrisonville, for appellants.

Christopher J. Carpenter, Independence, for respondent.

Before ULRICH, C.J., P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Mike Raysik (respondent) owns and operates an excavating company. Bernie and Norma Jean Standiford (appellants) own twenty-five acres of land in Lone Jack. This appeal involves a dispute between the parties over the partial construction of a small lake near the site of appellants' new house. Although appellants acknowledge that they had discussions with respondent regarding construction of the lake, they claim that a specific agreement was never reached. Appellants refused to pay respondent for the work he performed because they deny giving him authorization to proceed with the lake excavation. Respondent filed this lawsuit to recover payment. Appellants appeal from a jury verdict in favor of respondent in the amount of $5,680 plus interest of $492.99.

In a single point, appellants argue that the trial court erred in submitting respondent's verdict-directing Instruction No. 7 based upon MAI 26.03 because the evidence did not support a claim for an action on account. Appellants rather contend that an instruction modeled after MAI 26.06 should have been submitted to the jury since respondent's petition pled a breach of contract and the evidence failed to show that there was an express agreement between the parties. According to appellants, MAI 26.06 is used when there is a dispute as to the terms of a bilateral contract or whether a breach has occurred. Appellants request that we set aside the judgment below and remand the cause for a new trial. Affirmed.

The parties' business relationship extends back to 1992 when appellants hired respondent to grade some property they own in Kansas City. Appellants again hired respondent in early 1994 to prepare their property in Lone Jack for the construction of their new house. Appellants paid respondent in each instance. When respondent completed the preparatory work for the house in June 1994, the parties discussed respondent's role in excavating the proposed lake. It was also at this time that each party's version of events began to diverge from the other.

Respondent testified that an agreement was reached whereby he would construct the lake for $8,500, unless rock was discovered beneath the proposed lake, in which case the price would increase. Respondent further testified that appellants told respondent to delay the lake work until they could secure financing for the project. However, respondent did get permission to drill some test holes and he possibly received permission to

straighten out the course of the creek which had been disrupted by another excavating company. This preliminary lake work was commenced in June 1994, but the lake excavation did not begin until September 26, 1994, after respondent allegedly obtained appellant's authorization to proceed. Shortly after commencing the excavation, respondent struck a layer of porous rock and informed appellants. Efforts to remove the rock with the equipment respondent had on site were unsuccessful. On October 3, 1994, respondent, at appellants' request, halted the excavation. Appellants requested and received a written estimate on the cost of completing the lake. Respondent estimated that the final price would be $13,500, including the cost to remove the rock. Respondent did not perform any more lake work.

During the excavation, respondent testified that appellants regularly visited the lake site and frequently asked questions. Respondent stated that appellants never told him that he lacked permission to continue.

Although appellant Bernie Standiford acknowledged that he had discussed with respondent about building a small lake, he further stated that they did not discuss "anything that was concrete." However, he did state that respondent quoted him a price of $8,500 for the lake. He and his wife denied giving respondent authorization to commence any work on the lake beyond drilling test holes, which would provide a basis for respondent's estimate. Appellant also testified that he had enough money to pay for the project and denied telling respondent to delay the project until he could secure financing. Appellant testified that he was out of town when he first learned of the lake work. Appellant returned home and told respondent to stop digging until respondent could give him a written estimate. Appellant rejected respondent's estimate of $13,500.

In late February 1995, respondent gave appellants a bill for $5,680 to cover the cost of the work he had already performed on the partially-excavated lake. The parties discussed the bill briefly, but appellants refused to pay. Respondent filed a two count petition on October 2, 1995. Count I sought to enforce a mechanic's lien and was dismissed by respondent during trial. Count II was labeled "PETITION ON ACCOUNT" and prayed for $5,820, plus interest at nine per cent per annum.[1] Appellants filed their answer and counter-claim on October 31, 1995. The counter-claim sought to hold respondent liable for leaving appellants' land in a damaged condition.

Following the commencement of trial, appellants made the following objection to the use of respondent's proposed Instruction No. 7 which was based on MAI 26.03 and suggested that an instruction based on MAI 26.06 would be proper.

[DEFENSE COUNSEL]: [Appellants] object to Instruction 7 and 8, 7 being the verdict director of the [respondent]. I believe they should have to submit something similar to 26.06 or 26.07, which would be a bilateral contract, terms in issue. They pled an agreement as to No. 8. I don't believe this is the correct measure of damages. 4.04 would seem to be a quantum meruit damage instruction and I believe the same is not the proper measure of damages and the [appellants] have not consented to try this case under any theory of quantum meruit which was not pled or proven.

The court overruled the objection. Only Count II was submitted to the jury and the verdict was for respondent.

Appellants also challenged the submission of Instruction No. 7 and Instruction No. 8 in their Motion for New Trial, claiming that a verdict-directing instruction based on MAI 26.06 would have better conformed with the

---

1. Count II reads:

9. Plaintiff states that defendants are indebted to him on account of goods and wares, services and merchandise sold and delivered to and performed for defendants, at defendants' own special insistence and request, in the principal sum of FIVE THOUSAND EIGHT HUNDRED TWENTY AND 00/100 ($5,820) Dollars....

10. Plaintiff states that the price charged for said goods and wares, services and merchandise are, and were at the time same were sold and delivered, reasonable and proper.

11. Plaintiff further states that demand for payment thereof has often been made and payment refused.

evidence and pleadings. The motion further argued that respondent was improperly allowed to submit a verdict director and a damage instruction containing inconsistent theories of recovery. Citing to *Hereford Concrete Products, Inc. v. Aerobic Services, Inc.*, 565 S.W.2d 176 (Mo.App.1978), the court denied appellants' motion. *Hereford* held that in an action on account a verdict-directing instruction based upon MAI 26.03 is not inconsistent with a damage instruction based upon MAI 4.04. *Id.* at 178. *See also Wehrend v. Roknick*, 664 S.W.2d 247, 248 (Mo.App.1983). The same two instructions were used here. This appeal followed.

Respondent contends that appellants failed to preserve their point on appeal because they did not *specifically* object on the same grounds at trial and in their Motion for New Trial as required by Rule 78.07. We disagree and will examine appellants' point on the merits.

■■■ An action on account is an action based in contract. *Helmtec Indus., Inc. v. Motorcycle Stuff, Inc.*, 857 S.W.2d 334, 335 (Mo.App.1993). "Sufficiency of proof depends upon the showing of an offer, an acceptance, and consideration between the parties, as well as the correctness of the account and the reasonableness of the charges." *Id.* Substantial evidence having probative value or reasonable inferences which can be drawn from the evidence are required for a plaintiff to carry the burden of proof. *Id.* A plaintiff must show that 1) defendant requested plaintiff to furnish merchandise or services, 2) plaintiff accepted defendant's offer by furnishing such merchandise or services, and 3) the charges were reasonable. *Id.*

■■■ Count II of respondent's petition pled an action on account. MAI 26.03 is the pattern instruction for an action on account. Consistent with this verdict director, Instruction No. 7 read:

Your verdict must be for plaintiff if you believe:

First, at defendants' request plaintiff furnished to defendants certain grading and excavating services between June 17, 1994 and October 3, 1994, and

Second, plaintiff charged a total of $5,680.00 for such grading and excavation services, and

Third, plaintiff's charges were reasonable.

It is unclear from the record whether appellants and respondent in fact reached an agreement as to the lake. The parties' discussions regarding the proposed lake were strictly oral. Nothing was put into writing until, at appellants' request, respondent presented appellants with an updated estimate after he dug into rock.[2] It is clear that there was an oral agreement for respondent to conduct preliminary work on the lake, which involved the digging of test holes. The respondent dug test holes, but he also straightened the creek's drainage area, excavated a core trench and removed some trees. Respondent testified that he received authorization to perform this work and charged appellants $5,680 for it. There was no testimony regarding how much respondent charged for the test holes alone.

Appellants deny giving authorization for any work other than digging test holes. The parties have thus taken positions diametrically opposed to one another. Under these circumstances, it is difficult to discern whether an express contract ever existed between the parties. The jury, however, having the benefit of observing the parties' testimony, determined that appellants requested respondent to conduct the work he performed. Reasonable inferences can be drawn from the evidence that this was so.

■■■ However, assuming for the moment that there was not an express contract between the parties, it is conceivable that the proper instruction would have been MAI 26.05, which is the pattern instruction for recovery under quantum meruit. MAI 26.05 is appropriate when the legal relationship between the parties is a contract "implied in

---

**2.** It was disputed at trial whether respondent gave appellants written proposals in their dealings before the lake work began. Respondent denied giving written proposals. Appellants admitted into evidence three defense exhibits they claimed were written proposals given to them by respondent. However, a witness who did typing for respondent testified that she did not prepare those exhibits.

law" or "quasi-contract." *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 263 (Mo.App. 1989). The principal purpose for enforcement of a quasi-contractual obligation under quantum meruit is to prevent unjust enrichment. *Id.* An action on account and an action for quantum meruit are "almost mirror images." *Id.* at 262. "The former [26.03] requires the jury to find goods were furnished to the defendant by the plaintiff at the defendant's *request,* and the latter [26.05] requires the jury to find goods or services were furnished to the defendant and the defendant *accepted* the goods or services." *Id.* (emphasis added). The evidence indicates that appellants did not accept the services provided by respondent in this case. We can thus eliminate MAI 26.05 as the proper instruction. Furthermore, appellants have never claimed that MAI 26.05 should have been submitted to the jury. *See Kalish v. Smith,* 824 S.W.2d 35, 37 (Mo.App.1991).

Appellants rely upon *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 912 (Mo.App. 1984), wherein the court stated that MAI 26.06 is "appropriate where the jury issues are what agreement was made and whether the agreement was breached." The dispute in *Boswell* revolved around the interpretation of equipment leases, which were subject to a latent ambiguity. *Id.* at 912. This Court affirmed the granting of a new trial because the verdict-directing instruction, which was assumed to be patterned after MAI 26.06, "did not direct the attention of the jury to the term of the equipment leases in dispute and did not list the factors bearing on the jury's function to decide the issue." *Id.* at 913. We find *Boswell* to be distinguishable from the instant case because the critical issue here is *whether* an agreement was made rather than *what* agreement was made. There was an agreement for respondent to dig test holes. Beyond that we are left only with the testimony of the parties to determine whether appellants requested respondent to do the additional lake work he performed.

Because reasonable inferences can be drawn from the evidence that appellants requested respondent to do the lake work he performed, he should be compensated for that work. Consequently, we find that the trial court properly submitted Instruction No. 7 patterned after MAI 26.03 since an action on account was pled and facts existed to support the claim.

Appellants' point is denied.

Affirmed.

All concur.